## JACOB GALLMAN v. MARGARET PERRIE et al.

1. CHANCERY—JURISDICTION TO VACATE FRAUDULENT CONVEYANCES.—The jurisdiction of a court of equity is ample, either before or after sale under a judgment, to set aside a deed made in fraud of creditors—before sale to enable the creditor to present an unembarrassed title for sale; after sale to remove clouds from the title.

2. FRAUDULENT CONVEYANCE—CASE AT BAR WAS NOT SUCH.—Where one paid the purchase money of land which was intended for certain persons, but the title was taken in the name of a third person to whom the money was handed to be paid for the land; and when a judgment was about to be rendered against the person who had the legal title in him, before the judgment was rendered, he conveyed the land so as to secure it to those for whom it was originally intended by him who advanced the purchase money: *Held*, not to be fraudulent.

APPEAL from the chancery court of Monroe county. WHITFIELD, Chancellor.

The facts of this case are fully stated in the opinion of the court.

*Houston & Reynolds*, for appellant.

Two questions present themselves under the first assignment of error.

· 1. Can appellant attach the conveyances from G. T. Truland to T. J. Branin, and from Branin to Margaret Perrie for fraud?

2. Were these conveyances without consideration and fraudulent?

I. As to the first question, appellant states that he is the owner in fee of the land in controversy. Truland is the common source of title of appellant and of appellee, Margaret Perrie, and it is unnecessary for appellant to trace his title farther back than the common source. Gordon v. Singer, 39 Miss. 805.

When property has been fraudulently transferred by a judgment debtor, the plaintiff may come into a court of equity to have the conveyance set aside as a cloud upon the title, preventing a sale for its value; or the property fraudulently transferred, if the title was ever in the judgment debtor, may be sold under the execution at law, and the purchaser at the sale may come into a court of equity to set aside the conveyance for fraud. Pope v. Pope, 40 Miss. 517; Vasser v. Henderson, ib. 521; Salmon v. Bennett, 1 Am. Lead. Cas. 77, 78; Dargan v. Warring, 11 Ala. 995–6; Tillard v. McGee, 4 Bibb, 165–6.

Appellant being a judgment creditor of Truland's, and a purchaser at an execution sale of his property, may, under the authorities cited, come into a court of equity to set aside any conveyance made by Truland in fraud of the rights of his creditors.

II. Was the conveyance from J. G. Truland to T. J. Branin, and from Branin to Margaret Perrie, made without consideration, and with the intent to hinder, delay or defraud creditors? It is a question of fact to be decided by the testimony adduced at the hearing.

*Yergers & Nugent,* on same side.

Voluntary conveyances are always presumed to be fraudulent. Young v. White, 25 Miss. 146; Wells v.

Treadwell, 28 ib. 717. So that the investigation proceeds upon the presumption of fraud, and the rule requiring "clear proof" does not apply. *Prima facie*, the transaction is fraudulent, and the appellees must disprove it. Our case is made out when once we show that no money was paid by Branin to Truland, only Margaret Perrie to Branin. It is for the appellees to avoid this presumption by "clear proof" of the alleged truth. In Evans v. Green, 23 Miss. 295, the court say the proof must be "certain, and such as to leave no doubt that a contract was made," and this is the rule even where the parties do not stand under the presumption of fraud to trammel them. Apply this to the evidence, and it utterly fails.

Truland acquired title to the lots, or blocks, in 1860, and they were assessed to him in 1861. Truland entered into possession of the land under his deed, and continued in possession until his removal to Kentucky. He sold the house that was erected upon one of the blocks, to the knowledge of Andrew Perrie, who informed the purchaser that his title was good. He offered to sell the lots separately to third parties, during a period of several years, and never, at any time, suggested the idea of a fraud, or made any statements inconsistent with his absolute ownership. When the judgment was about to be rendered against him, he executed a deed to Branin nominally for a valid consideration, really, as the proof shows, to put the property beyond the reach of his creditors, and, to cover his own palpable fraud, excuses this *tergiversation* by the statement that it was done by the advice of counsel. Perrie never claimed, or asserted title to the lots, or claimed any right to them, but suffered Truland to hold himself out to the world as their owner, and to obtain such credit as the ownership would warrant. The presumption of law is that the party whose money is applied to the payment of the property, intended it for his own benefit, but this presumption is liable to be entitled

either by position or negative proof, or by the declaration of the parties contemporaneous with the transaction of purchaser, or by either direct proof or intention, or by circumstances attending the transaction, showing that such was not the intention of the party at the time. Capers et al. v. McCaa, 41 Miss. 487 The circumstances attending this transaction " are entirely irreconcilable with the hypothesis that any right or interest in the land was intended to be reserved" by Andrew Perrie for himself or any one else. Unless the testimony as to the trust is both "clear and convincing," the appellees would not be entitled to relief. 44 Miss. 571. Why did not Andrew Perrie assert a claim to the land at some time between the years 1860, 1866? Why did he suffer Truland to hold to the world the position of absolute owner? Why did he allow him to sell the house standing on the lots? Why did he allow him to offer the lots themselves for sale? Why did he not inform Branin, at the time he took the deed from Truland, of his alleged trust? And why did he not inform Gattman of it either before or at the sale under the execution? Why did not Margaret Perrie do some of these things? Why this long silence? Why these voluntary conveyances? Why not make, years ago, an open, candid declaration of the trust? Why this shuffling and double dealing? Why are the depositions of Brunnell and Coopwood not filed to show this alleged agreement of sale to Perrie? Why rest the case wholly upon the statements of a witness who, if he speaks truly, is infamous, and if falsely, a thief to all intents and purposes? What connection had Mrs. Burnett with the matter?

Another important inquiry suggests itself. Before any trust could arise, the money expended for the purchase of the land must have been paid, at the time Truland acquired his title. This is expressly negatived by the deposition of Truland, who swears that the

money had all been paid before.   There was, therefore, no resulting trust at all, and there is not sufficient proof of fraud on the part of Truland in the purchase of the land or the acquisition of title.

It is well established that only such case of trust can be established as is set out in the bill; Story, Eq. Pl. 257 ; and to establish the proof must be clear and convincing.   44 Miss. 571.   Testing the whole case by these rules, and the cross-bill should have been dismissed.   The alleged trust case he stated succinctly as follows: Andrew Perrie, father of Margaret Perrie, had contracted with Burnett and Coopwood to buy the lots in question, and paid a part of the purchase money; he employed Truland to go to Burnett and Coopwood, and have title made to him, Perrie furnishing Truland, at the time, with the money to finish paying for the land. Truland, for reasons unknown, and against the wishes and consent of Perrie, had the title made to himself; Truland has not since paid any part of the purchase money. Truland is sworn to establish this trust, and says: The lots were purchased by Andrew Perrie, and his money paid for them.   Before I knew Mr. Perrie, he had purchased block 45, or a portion of it, and after I married his daughter, he was anxious I should settle there with him.   No deed had been made to him.   Mr. Perrie, having confidence in me, had both blocks conveyed to me, with the understanding that block 39 should go to my wife, and the other to Margaret Perrie.   This was understood by all the parties to the deed, at the time it was made.   Myself and wife had no interest in block 45.   To the best of my knowledge I never did.   The greater portion of the payment was made in groceries.   I never understood it to be taken in Andrew Perrie's name. It may be observed that the answer to the cross-bill utterly denies every allegation as to this alleged trust ; and that the witness introduced to establish the resulting trust, positively establishes the fact that Andrew

Perrie, having confidence in him, had both blocks conveyed to him, with the understanding that block 39 should go to his wife, and the other to Margaret Perrie. Here was an express trust, and not an implied one; it is, therefore, within the operation of the statute of frauds, and is void, absolutely. If Truland's evidence is to be credited, this money, in some measure, accounts for the statement of the trust in the cross-bill, and the conveyance to Branin and Margaret Perrie. Besides, it is repugnant to the trust set up in the cross-bill, and could not be condemned at all at the hearing of the cause.

We respectfully submit that the cross-bill has utterly failed, and that upon all the evidence in the case the decision below should be reversed, and a decision here entered in accordance with the prayer of the bill.

*Gholson & Hooper,* for appellees.

I. If the purchase money was paid by Andrew Perrie for said lands, and his agent, J. G. Truland, took the title thereto in his own name, would a trust result that could be enforced in a court of chancery before the judgment lien had attached?

II. Did Perrie pay the purchase money?

III. If a court of equity would have enforced the resulting trust, will not the payment of the original purchase money by the *cestui que trust* support the voluntary conveyance by trustee of the property to whomsoever the *cestui que trust* shall designate before any other lien attaches?

IV. Can the statute of frauds apply to this case ? it being an "implied resulting" trust, or even if an "express trust," it having been reduced to writing before appellant acquired any rights.

The first proposition will be admitted, and needs no authorities cited to sustain it.

The second proposition rests upon the truth of their witness, T. J. Branin, and our witness, J. G. Truland.

Branin, in his deposition, swears that "old man Perrie (Andrew), before his death, notified him (witness) that he (Perrie) had paid the entire purchase money for said real estate, and directed him (witness) to convey the same to his daughter, Margaret Perrie."

Truland testifies that, to the best of his recollection, Andrew Perrie paid the entire purchase money for said blocks 39 and 45, and that Andrew Perrie purchased and paid for block 45 before he, Truland, ever knew him, Perrie. This is positive, certain and unequivocal.

Andrew Perrie claimed to Branin to have paid all the purchase money, and, Truland consenting to it, Branin conveyed to Margaret Perrie, under the direction of the said Andrew Perrie. This alone is the strongest circumstantial testimony, and, joined with the deposition of Truland, becomes convincing and undeniable.

They attack the truth of J. G. Truland's testimony. This shows to what "straits" they are reduced, and how little confidence they themselves have in their own case.

The variance between Truland's testimony and his answer, relied on by appellant to invalidate his testimony, rather strengthens our confidence in the truth of what he states. If he had intended to swear falsely, and been the bad man pretended by appellant, he would certainly have been too cautious and circumspect to have contradicted his answer by his testimony. He states that it has been a long time since the transactions, and he cannot undertake to state positively as to *minutiæ*. The court below credited his evidence.

Then, if Truland is to be believed, his testimony, in conjunction with the other circumstances, and Branin's testimony, clearly establish the second proposition or question, that Andrew Perrie did pay the purchase money.

III. To state the next proposition is to prove it:

" Can a man do voluntarily what a court of equity would force him to do ?"

The title to said blocks was made to Margaret Perrie nearly eight months *before* Gattman, appellant, recovered his judgment against Truland.

IV. "Trusts arising or resulting by implication of law, out of any conveyance of lands, are excepted from the operation of the statutes of fraud." Kelly v. Mills, 41 Miss. 268.

Appellant claims that it was an "express trust in parol, and therefore void." All contracts for the sale of lands are for a few minutes or a few hours, while agreeing upon the terms in parol, and therefore void until reduced to writing, so that if even this was "an express trust in parol," at first, it was afterwards perfected by being reduced to writing, in the conveyance from Branin to Margaret Perrie, (the person to whom Andrew Perrie directed the title to be made.)

Appellees seek only to set up as a condition to support the conveyance from T. J. Branin to Margaret Perrie the original purchase money ($800 00) paid by Andrew Perrie, but if they did desire to set up another it is entirely competent for them to do so. Hill on Trustees, 94; 2 Johns. Ch. 405.

The appellants allege that said conveyances of said property by Truland to Branin, and by Branin to Margaret Perrie, were fraudulent and made in fraud of the rights of the creditors of the said Truland, of whom appellant is one.

Has appellant made any such proof as will sustain a charge of fraud ?

"Fraud must be distinctly charged and clearly proven."

The only testimony relied upon by appellant to prove this fraud charged is that of H. Murphy. He proves only what Truland said, and in that proves nothing inconsistent with the existence of the trust under which

we claim to support the conveyances to us. We can-
not be held accountable for the private views expressed
by Truland to Murphy. If there was a resulting
trust—if Andrew Perrie paid the purchase money, and
the titles to said property are where Andrew Perrie
directed them made, the beneficiaries of said Perrie's
bounty, and where a court of equity would have placed
them, the court will allow them to stand notwithstand-
ing any fraudulent "ideas or conversation" entertained
by Truland.

Andrew Perrie having directed the title to said prop-
erty to be made to Margaret Perrie, it amounted to a
gift to her and his other heirs (the children of J. G.
Truland) were not and could not have been proper
parties to Margaret Perrie's cross-bill, and therefore that
objection, urged by appellant, amounts to nothing more
than his other positions—*naught*.

The case of Harrison, etc., v. Carroll, etc., 11 Leigh,
476, mainly relied upon by counsel for appellant in the
court below, rather strengthens our case than other-
wise, In that case " the parol agreement was unexe-
cuted at the time the judgment-lien attached, whereas
in the case at bar the parol agreement, or rather the
resulting trust, had been executed for a long time.

The case of Kelly v. Mills, 41 Miss. 267, in most, if
not quite all of its features precisely analagous to this
one, fully sustains the decree of the chancellor in this
case. That case is ably argued, and all the authorities
bearing on the subjects examined, explained, etc., by
the court.

Purchasers at sheriff's sales not purchasers for value
but mere volunteers, overruling Kilpatrick v. Kilpat-
rick, 23 Miss. 124.

The maxim applicable to judicial sales is *caveat
emptor*. Ib.

The concluding paragraph of the above case is con-
clusive of this in favor of appellees. 41 Miss. 284.

As to the general principle of resulting trusts, see Alsworth v. Cordtz, 31 Miss. 32; Jones v. McDougal, 32 ib. 179; Gee v. Gee, ib. 190; Hill on Trustees, 91 *et seq.*; Coppage v. Bonner, 34 Miss. 650; Soggins v. Heard, 33 ib. 426.

Appellant having failed to prove any fraud to which appellee, Margaret Perrie, or her father, Andrew Perrie, were parties or privy to, or by which the property of Truland was conveyed out of the reach of his judgment against Truland, his appeal must be dismissed, and the decree of the chancellor affirmed.

SIMRALL, J.:

The bill was filed by Jacob Gatman, who had recovered a judgment against Truland, and had purchased at sheriff's sale, blocks 39 and 45, in the town of Aberdeen, sold as Truland's property, for the purpose of setting aside and vacating certain conveyances, as made voluntarily, and with intent to hinder, delay, and defraud creditors. The conveyances complained of were made by Truland, the judgment debtor, to T. J. Branin, who conveyed to Margaret Perrie. The judgment was recovered after the conveyance of Truland to Branin; but the debt upon which it was founded, existed long before.

The jurisdiction of a court of equity is ample, either before or after a sale, under a judgment to set aside a deed made in fraud of creditors—before the sale, in order that the creditor may realize the full value of the property by offering an unembarrassed title to bidders; after sale, so that the clouds which obscure the title, and which, if permitted to remain, might endanger it, may be put away.

The question then is one of fact, the motive and purpose, which were the inducements to the conveyances. The judgment never was an apparent lien on the property, Truland having parted with the title

before the recovery of the judgment.   In order that the
complainant may succeed, he must show actual fraud,
fraud in fact.   The circumstances, stated in the bill,
and attempted to be proved, are that Truland conveyed
the land without consideration, and with a fraudulent
intent, as against his creditors.   It seems to be war-
ranted by the testimony that Andrew Perrie bargained
for the lands with Coopwood and Burnett, and agreed
to purchase the same ; having paid part of the purchase
money, he handed the balance to Truland to be delivered
to Coopwood and Burnett, and a deed to be taken.   The
defendant, Margaret Perrie, states in her answer and
cross bill, that the deed was to have been taken in the
name of her father, the said Andrew, who was also the
father of Truland's wife ; but was taken in violation of
confidence in his (Truland's) name.   It is made clear
by the testimony that Andrew Perrie furnished all the
purchase money, and that he intended the land, either
for his own benefit or for his children.   Truland declares
in his deposition, that the land was intended for the
benefit of his wife and her sister, Margaret Perrie.
When Truland was assured that it was not satisfactory
to his wife or her sister, that the title should remain
in him, he set up no claim which would be hostile to
the original purpose of his father-in-law, but transfer-
red the title to Branin, in order that it might be con-
veyed to the defendant, Margaret.   This security of
transfer was adopted, as he swears upon the advice of
counsel.   The land thus received a destination in con-
formity to the original purposes of Andrew Perrie (one
of his daughters, Mrs. Truland, having in the mean-
time deceased.)   If the testimony is sufficient to estab-
lish these facts, it is not inequitable that the title should
be placed, as originally designed by Andrew Perrie ;
nor could the complainant justly esteem it a hardship
if he should fail to subject it to his debt.   A circum-
stance worthy of note in this connection, is, that the

judgment of the complainant was for a copartnership debt of Truland and his partner, who had been merchants, and it may be supposed that the credit was rather given to the firm than to Truland personally. At all events, the joint assets would be the primary fund for the liquidation. We think that the chancellor was well supported by the testimony in the deduction which he drew, that Truland was actuated by the motives of complying with the wishes and intentions of Andrew Perrie, in making the conveyance, rather than a fraudulent intent, to hide property really his own from his creditor.

Truland certainly placed none of his means in the land. He received the title without paying anything; it was not fraud on his creditors for him to perform the agreement on which he received it. The equity of the defendant is equally strong, whether the trust resulted in favor of Andrew Perrie, from his advancement of the purchase money, or whether the lands were to be held for the equal benefit of his two daughters, the defendant, Margaret and Mrs. Truland. For the conveyances were made, because the father had advanced the money, and the title placed so that the lands might be enjoyed as he desired. The title so resting, before the complainant obtained judgment, he can not complain that the transaction is in fraud of his rights. A case very similar to this was recently decided in the supreme court of Pennsylvania, a synopsis of which will be found in the August number, 1871, of the American Law Register, page 533.

S. having a contract with O., for land, the wife of F. advanced the money, and the conveyance was made to F., he agreeing to convey to S., which he did. Judgment was recovered against F., under which his interest in the land was sold; held that the transaction was not fraudulent as to the creditors of F., and the purchaser at sheriff's sale did not therefore, get a title as against

S.   It is to be inferred that as F. did not pay the purchase money, and invested nothing in the title, his creditors had no just reason to complain, that he fulfilled his engagement to S. by transferring the title to him.   The doctrine seems to be reasonable and just, and applies to this case.

Truland's occupancy of part of the premises as a residence, was with the consent of Andrew Perrie, and in part consummation of his original plan.   The house which Truland built, and which was sold and removed, went in its proceeds to pay Truland's debts.   Testimony was given of Truland's offers and his statements to sell the lands.   The conversations and admissions of parties are not always the safest testimony.   They may have been misunderstood, misrecollected.   Such admissions may be casual, detached, not fully expository of the act or motive.

The small price of $12, at which the complainant bid off the land, indicates that neither he, nor others had confidence in the title.   It is not perceived for what reason he caused a second levy and sale some time afterwards to be made under his judgment, at which he bid off the property, at about ten times that sum, unless he supposed that his first insignificant bid brought his title into doubt.

We think that justice has been done, and concur with the chancellor.

*Decree affirmed.*