The First National Bank of Appleton vs. Bertschy and another, imp.

*May 10 — June 4, 1881.*

*(1-5, 7, 8) Conveyance in fraud of creditors. (5-7) Statute of Frauds: Agreement to pay another's debt. Loan of money to one in reasonable expectation of payment by another. (6) Evidence of such expectation. (8) Conveyance void as against creditors treated as security for a debt of grantor to grantee.*

1. One who takes a voluntary absolute conveyance of valuable property, knowing that the grantor is largely in debt and unable to pay his debts without subjecting such property to their payment, is guilty of a fraud in the law against the creditors of his grantor; and the conveyance is void as against them.
2. The fact that the grantee of land in such a case assumes to pay a subsisting mortgage on the land, which is confessedly worth a much larger sum than the mortgage debt, does not deprive the conveyance of its voluntary character as respects the mortgagor's remaining interest in the land.
3. If the maker of a note, which does not specify the rate of interest, has orally agreed to pay a higher rate (not usurious or unusual) than the note would otherwise bear, his payment of such agreed rate is not a fraud as against his creditors.

The First National Bank of Appleton vs. Bertschy and another, imp.

4. A mortgage of land is not in fraud of creditors if given to secure payment of sums which the mortgagor has promised to pay the mortgagee, where the invalidity of the promise arises merely from the fact that it is not in such form or evidenced in such manner as the law requires.

5. Where A. loans moneys to sons of B. without any request or knowledge on B.'s part, and without any reasonable expectation on A.'s part that B. will repay such loans if the sons do not, there is no moral obligation upon B. to repay the loans or any part of them; and a subsequent promise of B. to pay them, without any request from the borrowers that he will guaranty the payment in order to get an extension of time, is without consideration and is void, whether made in writing or in parol, and is not a sufficient consideration to uphold a subsequent transfer of B.'s property to A., as against creditors.

6. The mere fact that, some eighteen years before such loans were made, B. had in fact repaid a loan made by A. to another son under like circumstances, remarking that "he did not want A. to lose anything on his (B.'s) sons," held, not sufficient evidence that the subsequent loans were made with any reasonable expectation that B. would repay them if his sons did not.

7. A subsequent loan was made by A. to another son of B., under circumstances which satisfy this court that it was procured by such son from A. by direction of B., and with a reasonable belief on A.'s part that B. would pay it if the borrower did not; but there was no written promise and therefore no legal obligation on B.'s part. The son failed to repay the loan. Held, that B. might treat it as a debt due from him to A., and pay it by a transfer of property to A. in preference to other creditors.

8. No actual intent to defraud being shown, and there being a valuable consideration for the deed here in question, but not sufficient to uphold it as an absolute conveyance, against creditors, it is treated in equity as a security for the sums due from the grantor to the grantee.

APPEAL from the Circuit Court for *Outagamie* County. The case is thus stated by Mr. Justice TAYLOR:

" This is an action in the nature of a creditor's bill, to set aside a conveyance from *Leonard Bertschy* to *John Bertschy*, of certain real estate formerly owned by said *Leonard Bertschy*, and to subject the property so conveyed to the payment of a judgment against him. The complaint alleges that the conveyance was without consideration, and made for the purpose of hindering, delaying and defrauding the creditors of

*Leonard Bertschy,* and upon a secret trust known to *John Bertschy.*

"The answer of *John Bertschy* denies all intent to defraud on his part; denies that the conveyance to him was made without consideration; and alleges that the consideration paid by him therefor was $13,000, which was all the property was worth. *Leonard Bertschy* also answers, denying all intent to defraud his creditors by the conveyance of said property, and alleging that the conveyance was for a full consideration. The action was tried by the court; and, after hearing the evidence, the judge made and filed his findings of fact and conclusions of law.

"The first, second, third and fourth findings of fact relate to the judgment of the plaintiffs against the defendant *Leonard Bertschy.* The other findings of fact are as follows:

"'(5) When the indebtedness was contracted, the defendant *Leonard Bertschy* was the owner in fee of the premises described in the complaint, which were of considerably more than the value of $13,000, and he continued to own the same up to the 7th of September, 1878. (6) After contracting such debt, said *Leonard Bertschy* made the note to *John Bertschy,* and with his wife executed the mortgage for $6,000, dated May 16, 1878, recorded May 24, 1878, as in the complaint described. (7) On September 7, 1878, *Leonard Bertschy* and wife executed and delivered to *John Bertschy* a warranty deed of conveyance, conveying the real estate above described to *John Bertschy* for the pretended consideration therein expressed of $13,000, which deed was acknowledged and recorded, as alleged. The property thereby conveyed was all which *Leonard Bertschy* then owned, and he was then largely indebted to many persons. The mortgages and notes remain unassigned, and the land has not been since conveyed. (8) Said mortgage and notes and said deed to *John Bertschy* were without any valuable or other consideration, and with the intent on the part of *Leonard Bertschy,* and for the purpose, of hindering and de-

laying and defrauding his creditors of their lawful actions, debts and demands, and particularly this plaintiff, and upon a secret trust for his own benefit, all which facts above alleged *John Bertschy* well knew at the time he accepted said mortgage and conveyance respectively.'

" The conclusions of law were: ' (1) That said mortgage and said conveyance so made to *John Bertschy* are each of them fraudulent and void, and of no effect as against the plaintiff herein. (2) That plaintiff's said judgment is and was a valid lien upon said real estate, as the property of *Leonard Bertschy*, to the same extent and with the same effect as if no conveyance of any interest therein had been made. (3) That plaintiff is entitled to judgment vacating and annulling said mortgage and deed of conveyance to *John Bertschy*, and authorizing the sale of said real estate upon execution upon the judgment above mentioned, free and clear of all right or claim on account of said mortgage and deed, and for the costs of this action against said defendants *Leonard Bertschy* and *John Bertschy*.' "

From a judgment in accordance with these conclusions, *Leonard* and *John Bertschy* appealed.

*W. H. Seaman*, for the appellants, to the point that *Leonard Bertschy* might waive the defense of the statute of frauds, and recognize, without evasion, his liability for the advances made to his sons, and that a transfer of property to satisfy such a claim cannot be impeached by creditors, cited Bump on Fraud. Con. (2d ed.), 220; *Livermore v. Northrup*, 44 N. Y., 107; *Hyde v. Chapman*, 33 Wis., 391; *Sackett v. Spencer*, 65 Pa. St., 89; 108 Mass., 47; 41 Ind., 456; 42 id, 153; 63 Me., 326; 42 Pa. St., 529; 5 Harr. (Del.), 206; *Wilson v. Russell*, 13 Md., 494; *Trueman v. Fenton*, Cowp., 544; *Clark's Adm'r v. Rucker*, 7 B. Mon., 583; *Baldwin v. Ryan*, 3 N. Y. Sup., 251; *Gallman v. Perrie*, 47 Miss., 131.

*H. W. Tenney*, for the respondent, argued, *inter alia*, that there was no consideration for the conveyances to *John Bert-*

*schy. Leonard Bertschy* never became liable to pay the debts of his sons, because he never in fact promised to pay them, because there was no consideration to uphold such a promise, and because the statute of frauds made it impossible to incur such liability without writing. Throop on Verbal Agreements, 79 et seq.; *Lampleigh v. Braithwaite,* 1 Smith's L. C., 222; *Mills v. Wyman,* 3 Pick., 207; *Frey v. Fond du Lac,* 24 Wis., 204; *Kaye v. Crawford,* 22 id., 320; 1 Parsons on Con., 469. There was not even a moral consideration, such as the law recognizes and gives effect to. A moral consideration is only recognized when it is founded on an anterior legal right which has become devoid of legal remedy. Here there was no antecedent legal liability to be revived. 1 Parsons on Con., 431 et seq.; *Lampleigh v. Braithwaite, supra;* Throop on Verbal Agreements, 490, 505; *Kœhler v. Dibblee,* 32 Wis., 19. A voluntary conveyance, that is, a conveyance without valuable consideration, is void as against creditors who are prejudiced thereby. May on Fraud. Con., 31–48; 1 Am. L. C., 35–43; *Hamlin v. Wright,* 26 Wis., 50; *Pike v. Miles,* 23 id., 164; *Avery v. Johann,* 27 id., 246; *Kœhler v. Dibblee,* 32 id., 19; *Manseau v. Mueller,* 45 id., 430; *Carhart v. Harshaw,* id., 340. And deeds founded on any moral, but not legal, consideration, are looked upon as merely voluntary. Even if, therefore, there had been a moral consideration in this case, it could not avail to defeat existing creditors. It takes money to defeat money. *Twyne's Case,* 3 Coke, 80; May on Fraud. Con., 49, 233, 235; 1 Parsons on Con., 431 et seq.

TAYLOR, J. Upon the findings of fact, to which the respondent took no exceptions, we think it must be held that the court based its judgment against the appellants solely upon the ground that both the mortgage and conveyance from *Leonard* to *John Bertschy* were without consideration, and for that reason fraudulent and void as to the creditors of the said *Leonard.*

There is certainly nothing in the findings of fact which charges *John Bertschy* with any intent to defraud the creditors of *Leonard*, except such intent as may be deduced as a conclusion of law from the fact that he took a conveyance of a valuable estate from *Leonard* without giving any consideration therefor, knowing that such estate was all the estate the said *Leonard* owned, and knowing that he was indebted to a considerable amount at the time the conveyance was made and accepted by him. We think it must be admitted that the evidence clearly establishes the following facts: That at the time *Leonard Bertschy* gave the mortgage for $6,000, and afterwards the deed, to *John Bertschy*, *John* knew that *Leonard* was indebted, or had contracted liabilities, for a considerable sum of money, which he might ultimately be compelled to pay; that the estate mortgaged and conveyed was the greater part of all the estate which said *Leonard* owned; and that, unless this estate were subjected to the payment of such liabilities, the said *Leonard* would be wholly unable to pay said claims against him. We think there was sufficient evidence of fraud in fact to avoid the mortgage and deed in favor of the creditors, if the mortgage and deed were given without any consideration. The rule upon such a state of facts is very clearly stated in the opinion of Chief Justice SHAW in the case of *Marden v. Babcock*, 2 Met., 99, 104. He says: " In a voluntary absolute conveyance, the fact that no consideration is paid is, of course, known to both parties. If the grantor was in debt at the time, as such conveyance must necessarily tend to defeat the rights of creditors, and as all persons are presumed to contemplate and intend the natural and probable consequences of their own acts, the conclusion is irresistible that such conveyance was intended to defeat the creditors, and is therefore fraudulent." The judgment in this case must be affirmed if the evidence sustains the finding of fact that the mortgage and deed " were without any valuable or other consideration." If this finding is sustained by the evidence, then

it is clear that the evidence shows they were fraudulent and void as to creditors.

It is said by the learned counsel for the appellants, that the deed was not without consideration, because the property conveyed was subject to a mortgage of $5,000, which *John Bertschy* assumed to pay. We do not think such assumption alone could sustain the deed. It is conceded on the part of the appellants, that the property conveyed is of far more value than the mortgage which *John Bertschy* assumed to pay. The assumption of the mortgage, which is a charge upon the estate, and which the estate is amply sufficient to pay, cannot, as to creditors of the grantor, be deemed a sufficient consideration to sustain the conveyance. Such a transaction is nothing more nor less than a conveyance of the interest of the mortgagor in the estate mortgaged, without any consideration therefor. The creditors of the mortgagor have the right to his interest in the mortgaged estate, and he has no more power to give that interest away to their prejudice than he has to give away a part of his estate not mortgaged.

We must, therefore, look into the evidence to determine whether there was any other consideration for the mortgage and deed. The only other consideration for them grows out of the following state of facts: *John Bertschy* had loaned to *Leonard Bertschy*, March 19, 1874, $3,000, upon which he was to receive interest at ten per cent.; in September, 1871, he loaned to Olly Hammond, a son-in-law of *Leonard Bertschy*, $1,000; to George Bertschy, in September, 1874, $500, and a few months after $400; and to Perry H. Bertschy, June 10, 1874, $2,000, and September 1, 1874, $1,000. George and Perry H. were sons of *Leonard Bertschy*. It is claimed by the learned counsel for the appellant, that all these loans were made by the said *John Bertschy* with the understanding that *Leonard Bertschy* was to be ultimately liable for their repayment to him in case the sons and son-in-law failed to make payment, and that the mortgage in the first instance, and the

deed subsequently, were given to secure the repayment of the several sums so loaned by the said *John Bertschy* to them.

As to the loan of $3,000 to *Leonard Bertschy*, there is no dispute as to its being a *bona fide* loan, for the repayment of which said *Leonard* was both legally and equitably bound. The evidence shows that, previous to the giving of the mortgage and deed in question, *Leonard* had paid upon that loan the following sums: April 10, 1875, $300; May 16, 1876, $200; February, 1878, $3,000 ($1,000 in cash, and $2,000 in note and mortgage of Jacob Bertschy). The amount of this loan, with interest from the date at ten per cent. to the time when the last payment was made, February 1, 1878, would be $4,158, very nearly; deducting the amounts paid, $3,500, there would remain unpaid on this loan the sum of $658. As to this item there does not seem to be any reasonable doubt. The fact that it does not appear that there was any written agreement as to the amount of interest, cannot alter the case. It appears that the first year's interest was paid at the rate of ten per cent.; and if that was the verbal understanding between the parties, it would be no fraud upon the other creditors if it was finally paid at that rate by the borrower, *Leonard Bertschy*. After applying these payments there would still be due upon this loan, when the deed was given, the sum of $658, which formed part of the consideration for the mortgage and deed.

The claim made by the appellant *John Bertschy* that *Leonard Bertschy* was under obligation to pay the loans made by him to the son-in-law and sons of *Leonard*, and that the mortgage and deed were given to secure or pay such sums, rests upon the following evidence: *John Bertschy* testifies " that twenty-five years ago *Leonard Bertschy* was living at Woodstock, Illinois, and was worth about $65,000 or $75,000; that about twenty-two years ago he loaned Leonard Bertschy, Jr., a son of *Leonard*, who was then keeping a store, the sum of $3,000; that when *Leonard Bertschy* saw him, just after he

made the loan, he scolded about it, but said, 'I don't want you to lose anything on my boys, any way,' and about a year afterwards *Leonard Bertschy, Sr.*, paid *John* the $3,000 so loaned to his son; that he made no more loans to the sons of *Leonard* until 1871, when he loaned to Olly Hammond $1,500, September 11, 1871, $500 of which was afterwards paid by Hammond; and that afterwards, in September, 1873, he loaned to George Bertschy $500, and four to six months afterwards $400; and June 10, 1874, $2,000, and September 1, 1874, $1,000 to Perry H. Bertschy. In regard to these loans he says: "No note or any other evidence of indebtedness was taken from any of the persons to whom they were made. Saw the old gentleman once in two or three months, and whenever I loaned any money to the boys I would tell him of it as soon as I saw him. He would tell me I was too liberal with the boys, and always said I should lose nothing by them. Every time I made these loans, the old gentleman used the same expressions. After I had made the loan to George, in February, 1873, the first time *Leonard Bertschy* met me he said: 'You know, the first thing, I have to pay for these things.' The general purport of the conversations was, that the boys were getting all the property from the old man; that he was getting old, and feared to get poor, and could not see, if it kept on like this, how he could pay me and keep alive. After I made the loan to George Bertschy, I saw the old gentleman and spoke to him about it. He scolded about it, that he would have to pay, saying: '*I know in the end I will have to pay it;' that I should not lose anything by what I let the boys have.* About two or three months after I loaned the money to Perry H. Bertschy, *I saw the old gentleman, and he said, 'John, I feel very much pleased that you helped him. I feel satisfied that he will do well after this, and, if worse comes to worse, I will pay it.'*" In regard to the loan to Perry H. Bertschy, he himself testified: "I talked the matter over with my father before I applied to *John* for the

loan, and asked his opinion about it, and as he (father) did not have the money, *he ordered me to ask John for the loan, providing I thought I could make a success of the business and pay it, and I remember his stating at different times that if I made a failure of it of course he would have to pay it.* Within thirty or sixty days after I talked with my father about it, I got the loan of *John.*" *Leonard Bertschy, Sr.,* testified as to the loan to Perry H. Bertschy as follows: "I remember Perry Bertschy got of *John Bertschy* $3,000. Perry came to me and said: 'Father, can you help me?' I told him I could not. I told him to go to *John.* I would pay him if I could. If I couldn't pay him with money, I would pay him with something else. That is the answer I gave Perry. He got the money. I knew when he got it. He said, 'Father, I got the money; it's all right.'"

*John Bertschy* testified further that *Leonard Bertschy* said nothing personally to him before the money was advanced to Perry, or any of the other boys, upon the subject of making the loans. He says: "I helped them along as a relative, and the whole family looked to me as having cash, and I helped in case of necessity. On this basis I made all these advances. *Leonard Bertschy* had nothing to do with them at the time they were made." *John Bertschy* was a son-in-law and nephew of *Leonard Bertschy.* The evidence showing the reason for giving the mortgage and deed is stated by *John Bertschy* as follows: "I had seen the old gentleman a short time before the mortgage for $6,000 was given. I went to Appleton to see him. I was hard up, and told him things had reversed, and told him I felt kind of blue; told him my whole circumstances; and, after I got home, he sent me the mortgage and notes, and I put them in my safe and was thinking what I should do with it, because I should not use it against the old man under any circumstances. About the ninth of September he deeded the property to me. He said, '*John,* I am getting old and may die any day, and should like to see you paid. I

intend to deed you my stores, so that I can rest easier.' I said I did not insist on anything; that I would not pull his head off, and that I would leave it all to him. He said it was all he had; that he wanted to put me in possession; that he would rather have me in possession, so that, in case he should die, I could not lose my money. I understood he deeded the property to me to pay me all owing me by himself and his boys. He knew every dollar of the loans made by me at the time. We did not foot up or make any figures about it. He just deeded me all that land in full of those sums. I let him do just as he was a mind to about it."

*Leonard Bertschy* testified on this subject as follows: "I went to *John* four or five times, and stayed with him about a month. *John* had lost about $30,000 by his brother. I said, '*John*, you shan't lose a cent by my folks. I'll try that you get your pay for it.' I told him, 'You must not be scared; I'll pay every cent that my folks owe you.' I talked to him about the loan to George. I told him, 'Now I will make that thing good; you know I will pay it.' He said, 'You do as you please.' I said, 'No; I don't do as I please; I pay every cent that my boys got from you; what my family got from you.' "

It will be seen from the evidence that the loans to Hammond and George Bertschy were made by *John Bertschy* without any knowledge on the part of *Leonard Bertschy*, at the time the loans were made, that they had been applied for, or that *John* intended to make the loans; and if *John* had any reason to expect that *Leonard* would repay them if the boys to whom the loans were made failed to do so, such expectation must have been based upon the general statements made by *Leonard*, that he should not lose anything by what he let the boys have, and from the fact that eighteen or twenty years before he had in fact repaid a loan of $3,000, which *John* had loaned to his son Leonard, Jr. We are all of the opinion that if these loans were made without any expectation on the part of *John Bert-*

JANUARY TERM, 1881. 449

The First National Bank of Appleton vs. Bertschy and another, imp.

*schy* that *Leonard Bertschy* would pay the same, and without his knowledge or request, then there would be no legal or moral obligation on the part of *Leonard Bertschy* to pay the same or any part thereof; and that a subsequent promise to pay such loans, made without any request on the part of the persons borrowing the money, that he should guaranty the payment of the money to *John Bertschy* in order to get further day of payment, would be a promise made without any consideration, and would be void, whether made in writing or by parol. And the transfer of *Leonard's* property in fulfilment of such void promise would rest on no sufficient consideration as against his creditors.

As to the loans made to Hammond and George Bertschy, we cannot find any sufficient evidence that they were made with any reasonable expectation that *Leonard* would pay the same if the borrowers failed. The only ground for any such expectation was the fact that a loan made under similar circumstances to another son eighteen years before had been paid by the father. This we deem too slight a circumstance on which to ground any conclusion that in making these loans any credit was given to the father, or that there was any thought at the time of holding the father responsible for the loans. We are, however, of the opinion that the loan made to Perry H. Bertschy was made under different circumstances, and under such previous assurances that *John Bertschy* had the right to suppose the father held himself responsible for the amount loaned, and would refund the same if loaned by him. The loans made to Hammond and George were made when they were living far away from the father, and under such circumstances that he would not be likely to know anything of the loans being made, or of the fact that they had been applied for. The loan made to Perry H. Bertschy was made when he was residing in the same city with his father, and doing business there. It was in fact made by the direction of the father, and with the promise of the father, to his son at least, that he would

see that *John* should get his pay. This loan was also made after, and but a short time before *Leonard* had repeatedly told *John* that "he should not lose anything by what he let the boys have." Although it is not shown by the evidence that it was communicated to *John* at the time the loan was made to Perry H. that his father had directed him to apply for the loan, and had made an express promise to pay if his son should not, we think there is sufficient in the evidence to show that the loan was made by *John Bertschy* believing that it was known and approved of by the father at the time it was made, and with the expectation that the father would see that it was paid. The others were made without the knowledge of the father, and consequently without any expectation on his part of being called upon to make the same good, and under circumstances which would not give much assurance that the lender placed any reliance on the father's credit. In the case of the loan to Perry H., the father not only knew of the loan, but directed the same to be applied for, and at the same time promised the borrower if he could not pay for it he would, and the lender had previous assurances, on the strength of which he had the right to expect the father would make the loan good to him in case the son was unable to do so.

We do not think the evidence sufficient to sustain an action at law to recover the amount loaned from *Leonard*, for the reason that the promise was not in writing, and because it was a collateral promise to pay the debt of another. The promise was not to pay absolutely, but to pay in case the son failed to pay. In such case the debt is the debt of the son, and the father stands in the light of one who is surety for the payment and not a principal debtor. The contract is, therefore, void under the statute of frauds. It is urged by the learned counsel for the respondent, that, because the promise of the father was void under the statute, such void agreement does not furnish any sufficient consideration for the mortgage or for the deed as against the creditors of *Leonard*. This we think is an

erroneous view of the law on this subject. If there was an agreement upon sufficient consideration to support an action, were it not for the statute of frauds, then the debtor has undoubted right to waive the statute and pay the debt, and such waiver and payment is not a fraud upon his other creditors. The other creditors cannot insist upon the debtor interposing the statute against the claims of one having his promise to pay grounded upon a sufficient consideration, in order to protect their rights. If in equity the debtor owes the demand, a court of equity will not declare its payment a fraud. The decisions of the courts fully establish this point.

This court, in *Hyde v. Chapman*, 33 Wis., 391, held that when a conveyance was made by a debtor, of real estate which he held in his own name, but the consideration for the purchase of which had been paid by another, and the deed taken in the name of the debtor, and for the use, benefit and accommodation of the person paying the consideration, such debtor had the right to consider the equitable claim of the person paying the purchase money, and that such conveyance of the estate to the person paying for the same was not voluntary or fraudulent as against the creditors of the person holding the title. Under the facts presented in that case, neither a court of law nor one of equity could have compelled the debtor to make the conveyance to the person paying the purchase money, the statute having declared that in all such cases no trust should result in favor of the person paying the purchase money, but that the absolute estate should vest in the person to whom the estate was conveyed. That case clearly holds that where a conveyance is made by a debtor, of property to which he has the legal title, but as to which another has an equitable claim, though such equity is not enforceable in any court, such debtor may recognize such equitable claim, and convey the estate to the claimant, without being guilty of any fraud as against his other creditors. The present chief justice, who delivered the opinion in that case, says: " B. A. Chapman (the

debtor) was the absolute owner in law and equity, and no trust resulted in favor of James A. Chapman in consequence of his paying such consideration. This may be conceded. Still, if B. A. Chapman recognized James A. Chapman's equities, and actually conveyed the property according to the original understanding and arrangement, we apprehend there would be nothing in the transaction which a court of equity would condemn." There can, we think, be no doubt as to the soundness of the decision in that case upon the facts stated. Possibly there might be circumstances under which such a transfer would not have been upheld. If the person paying the purchase money had permitted the original grantee and debtor to enter into possession of the estate, and receive the rents and profits thereof for a considerable length of time, and credit had been given to the party in possession upon the strength of such apparent ownership and use, an equity might have arisen in favor of the creditors which would outweigh the equity of the person paying the original consideration; but no such fact was presented or relied on in that case. Upon the facts, the equities were in favor of the grantee. That case is fully sustained by *Sackett v. Spencer*, 65 Pa. St., 89. The latter case was similar to the one above cited, and the court, in disposing of it, say: "Having received the title without the payment of any consideration by himself, it was no fraud on the rights of creditors to fulfill the understanding upon which he received the title. . . . The question of mortgage or not, or trust or not, concerned Foreman alone, so long as the title was uncontrolled by the lien of any judgment. It was in his power, if there were no liens to prevent it, to carry out honestly and in good faith the agreement under which he took the title, without payment of any consideration on his part." The same ruling was made in *Gallman v. Perrie*, 47 Miss., 131, and *Clark's Adm'r v. Rucker*, 7 B. Monroe, 583.

It is also held that a mortgage or other security given by a debtor to secure the payment of a debt of a third person, when

given upon the request of such third person and of the person to whom the debt is due, is not voluntary and fraudulent as to the creditors of such debtor. *Ex parte Hearne*, Buck's Bankruptcy Cases, 165. This case was similar to the case at bar. The father, at the request of the son, gave a mortgage to secure his debt, to the amount of £1,700, and the mortgage was held good as against the creditors of the other. To the same effect is the case of *Marden v. Babcock*, 2 Met., 99. It is also held that a conveyance of property to pay a debt barred by the statute of limitations or discharged in bankruptcy is not fraudulent as to the other creditors of the person making such conveyance. *Wilson v. Russell*, 13 Md., 494–529; *Clark's Adm'r v. Rucker*, 7 B. Monroe, 585; *Geer v. Archer*, 2 Barb., 420–424. Parsons, in his work on Contracts, says: "The morality of the promise, however certain or however urgent the duty, does not of itself suffice for a consideration. In fact, the rule amounts at present to little more than permission to a party to waive certain positive rules of law which would protect him from a plaintiff claiming a just and legal debt." 1 Parsons on Contracts, 434. These cases seem to establish the rule that a conveyance or security given for a debt or in fulfilment of a contract which could have been recovered or enforced in an action were it not for some legal maxim or statutory provision which prevents such recovery by reason of the contract not being in the form prescribed by the statute — or, in other words, not being evidenced in the manner prescribed by law, — is not a voluntary conveyance or security, and therefore fraudulent and void as to creditors, if the evidence shows that there was a sufficient consideration for the debt or promise to support the same were it not for the statutory requirements. As we understand the evidence in the case at bar, there was a sufficient consideration to support the promises of *Leonard* to pay the loan made to Perry H. by *John Bertschy*. The loan having been made with the promise that *Leonard* would see that the same was paid, the reliance

of *John* upon that promise in making the loan was a sufficient consideration to support an action against *Leonard* for the amount loaned, were it not for the statute which requires such promise to be in writing to make it enforceable. This statutory objection to the validity of the contract, *Leonard* had the right to waive in favor of honesty and good morals; and such waiver is not evidence of an intent to defraud his other creditors. Both equitably and morally there are often more potent reasons for securing the payment of a debt so promised to be paid, than for the payment of other debts for the payment of which the debtor was bound by all legal formalities.

The cases of *Livermore v. Northrup*, 44 N. Y., 107, and *Keen v. Kleckner*, 42 Pa. St., 529, cited by the learned counsel for the appellants, and especially the case of *Livermore v. Northrup*, seem to go much further than we are disposed to go in this case. In that case it would seem to have been held that a debtor might assume the payment of the debt of a third person without any proof of any previous promise to pay such debt, and without any request on the part of such third person, or the person to whom his debt was due, that he should secure the payment of the same. It is, perhaps, probable that the facts of that case showed that the assumption of the debt of such third person was at the request of the parties interested, and for the purpose of securing the same, and was within the principles of the case of *Marden v. Babcock*, 2 Met., 99, above cited. The case of *Keen v. Kleckner, supra,* decides simply the point involved in the case at bar, " that the verbal assumption or agreement to pay an indebtedness, which under the statutes could not be enforced at law, is, nevertheless, a good consideration for the confession of a judgment for the amount of such indebtedness, and such judgment so confessed is not fraudulent and void as to the creditors of the person confessing the same."

There being no actual intent to defraud the creditors of *Leonard* by the giving of the mortgage or deed, found by the

court or shown by the evidence, except such as would flow necessarily out of the transaction if it were made without any valuable or other consideration, we are inclined to hold that the appellant should have the benefit of the conveyances as security for the amount remaining unpaid on the loan made to *Leonard* himself, and also for the amount of the loan made to Perry H. Bertschy, with interest thereon at the rate of seven per cent. per annum. Under the evidence and the authorities, we think the grantee in the deed, *John Bertschy*, may avail himself of the deed as security for the amount which was equitably due to him from *Leonard* at the time the same was given, notwithstanding it may have been intended as security or payment for other claims which *Leonard* was under no legal or equitable obligation to pay.

May on Fraudulent Conveyances, 235, says: "A deed of sale for an inadequate consideration may be set aside as far as it purports to be an absolute conveyance, and may stand as security only for the money actually advanced." So in this case, although the deed was given as security or in payment of several claims, some of which it was the duty of *Leonard* to pay, and others he was under no obligation to pay, as to such as he was not obliged to pay the deed should be declared void, but as to those which he was obliged to pay it should stand as security for the payment thereof, and not as an absolute conveyance. The transaction having been made in good faith, and without any fraudulent intent, there is no reason for holding the whole transaction fraudulent and void in favor of the other creditors. *Leonard* having the right to prefer *John Bertschy* over his other creditors, as to the debts he was under obligation to pay, such preference should be upheld by this court.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to the circuit court to enter judgment declaring that the deed to *John Bertschy* be held by him as a mortgage upon the real estate therein

described, to secure to him the payment of the sum of $4,625, with interest thereon from the date of said deed at the rate of seven per cent. per annum, that being the amount unpaid upon the loan of $3,000 made to *Leonard Bertschy*, and the amount of the $3,000 loaned to Perry H. Bertschy, with the interest thereon to the date of said deed at the rate of seven per cent. per annum; and that said *John Bertschy* be charged with all sums which may have been actually received by him for the rent of said premises since the date of said deed, over and above what he has expended in the payment of taxes, insurance and necessary repairs; and that said real estate be sold subject to the aforesaid claim of *John Bertschy*, and the proceeds of such sale be applied towards the payment of the judgment of the said plaintiffs against *Leonard Bertschy*.