Crawford v. Greenleaf.

---

BARTON S. CRAWFORD *et al.*, Appellants, v. WILLIAM H. GREENLEAF, Respondent.

St. Louis Court of Appeals, March 22, 1892.

1. **Attachment:** APPEAL. When a plaintiff in an attachment suit appeals from an adverse judgment on the plea in abatement, the giving of bond is not essential to the validity of the appeal.

2. **Partners:** EFFECT OF ASSUMPTION OF PARTNERSHIP DEBT BY ONE OF THE PARTNERS. *Held, arguendo,* that when one partner purchases a stock of goods belonging to the partnership, and in consideration of the transfer thereof to him assumes the payment of a mortgage of the stock given by the other partners, the relation of principal and surety is established as between himself and his partners in regard to the liability for the mortgage debt.

3. **Attachment:** FRAUD: LAW AND FACT. Where the issue in an action at law is one of fraud in fact, and fairminded men can differ in regard to the determination of the issue under the evidence, this court cannot review a finding of the trier of the fact in favor of the *bona fides* of the transaction in question.

*Appeal from the Clark Circuit Court.*—HON. BEN. E. TURNER, Judge.

AFFIRMED.

*W. L. Berkheimer* and *T. L. Montgomery,* for appellants.

(1) The mortgage introduced in evidence known as the Mack mortgage was and is fraudulent and void as a matter of fact under the evidence. *First.* It is not fraudulent and void as a matter of law. *Hughes v. Cory,* 20 Iowa, 399; *Clark v. Hyman,* 55 Iowa, 14; *New v. Sailors,* 114 Ind. 407; *Roundy v. Converse,* 71 Wis. 524. *Second.* Defendant assumed the payment of the Mack mortgage as a part of the consideration and purchase price of the drug stock, and plaintiff became his surety and, hence, his creditor. Jones on Chat. Mort. [2 Ed.] sec. 487; Jones on Real-Estate Mort. [3 Ed.] secs. 741, 748; *Gruther v. Alexander,* 15 Iowa, 470; *Kellogg v. Secord,* 42 Mich. 318; *Klapworth v. Dressler,* 78 Am. Dec. 69, and notes; *Dean v. Walker,* 107 Ill. 540; *Smiker v. Seibert,* 18 Kan. 104. *Third.* Even if the Mack mortgage is fraudulent and void as a matter of law, plaintiffs, being creditors as sureties and as holding notes for the purchase price, have a right to contend that, as to them, they having lost all control over the stock of drugs, the defendant

acted fraudulently in selling the goods and not apply-
ing the proceeds arising from sales to discharge the
indebtedness secured by the Mack mortgage. Instead
of so doing, defendant paid his own debts with the
proceeds of the daily sales. *Webster v. Singly*, 53 Ala.
208. (2) The mortgage, given by the defendant to
his father to secure the latter as security for him, was
fraudulent and void as a matter of fact under the evi-
dence, and should have been so declared by the court.
*Weber v. Armstrong*, 70 Mo. 217; *Johnson v. McAlis-
ter*, 30 Mo. 327. This mortgage remained unsatisfied
upon the records of Clark county at date of the attach-
ment. *Weber v. Armstrong*, *supra*. For reasons above
stated plaintiffs' declarations of law should have been
given.

*Blair & Marchand*, *J. W. Howard* and *Callihan &
Whiteside*, for respondent.

THOMPSON, J.—This is an appeal by the plaintiffs
from an adverse judgment on a plea in abatement in a
suit by attachment. The respondent has made a
motion to dismiss the appeal, because no appeal bond
has been given as required by the governing statute.
R. S., sec. 562. We must consider this motion at the
outset, because it concerns our own jurisdiction; since
if an appeal has not been taken as prescribed by the
governing statute, this court has no jurisdiction to pro-
ceed to an examination of the merits of the trial on the
plea in abatement. The statute is as follows: "The
plaintiffs, against whom such issue is found and judg-
ment rendered, may appeal from such judgment, and
*such appeal shall operate as a supersedeas* of such
judgment, and shall preserve the attachment in full
force until the dismissal or determination of such
appeal. If the plaintiff, in case the judgment be
against him, fails to appeal from such judgment, or if
such appeal be dismissed, or if such judgment against

him be affirmed, the plaintiff and his sureties shall be liable on their bond for all damages and costs occasioned by the attachment, or any subsequent proceedings connected therewith ; and after such failure of the plaintiff to appeal or after such dismissal or affirmance, defendant may plead to the merits, and the suit shall proceed to final judgment on the cause of action therein alleged, as though commenced originally by summons alone. Bond on such appeal *shall be required* in such sum as may be fixed by the court. The defendant shall not be required to plead to the merits of the action until after the time fixed by law for appeals shall have expired, if the plaintiff calls for an appeal ; or, if an appeal is taken until its determination ; and, if the party against whom judgment shall be rendered fails to appeal during the time fixed by law for appeals in other cases, he shall be deemed to have waived all right to have such judgment reviewed."

There is no statutory provision applicable to appeals by the plaintiff from an adverse judgment under a plea in abatement in an attachment suit, allowing bond to be filed in the appellate court, as there is in the case of appeals from judgments from justices ( R. S., sec. 6340), or allowing appeals to progress without a *supersedeas* bond, as in the case of appeals from the circuit court to the supreme court or the appellate courts. R. S., sec. 2249. On the contrary, this statute, in the very sentence which allows the appeal, prescribes its effect, namely, that it shall "operate as a *supersedeas;*" and to that end it provides further on that "bond shall be required." It is argued that the statute contemplates such an appeal, and no other, as shall have the effect of preserving the attachment proceeding *in statu quo*, until it is determined whether that proceeding has been lawfully taken. In support of this view we are referred to the decision of this court in *Green v. Castello*, 35 Mo. App. 127, where we held that

an appeal from the probate court to the circuit court could not be taken without the filing of a bond, as required by the statute, there being no statutory provision allowing such appeals to be taken and to proceed without a *supersedeas*. But we think that this decision does not control the question before us. We do not overlook the fact that the statute uses the word "shall," which is generally construed to be a word of command, and which ordinarily prevents courts from taking the view that a statute is directory merely. But it is to be observed that the statute contemplates that the original attachment bond shall stand good for the costs and damages of the appeal from the judgment on the plea in abatement, and that it also leaves the amount of the appeal bond to the discretion of the circuit court. Under the statute it is plainly within the power of the circuit court, if the original bond is deemed sufficient to cover the costs and damages of the appeal from the judgment under the plea in abatement, to require the giving of an appeal bond in a nominal sum merely, in which case the appeal would, under the statute, operate as a *supersedeas*. Now, if the court can grant an effective appeal which shall be a *supersedeas* upon the giving of a bond of one dollar, or even one cent, which is the same in substance as no bond at all,—a mere compliance with form,—then there seems no difficulty in concluding that the statute is directory in such a sense as not to cut off the right of appeal where no bond is given at all. But of course, if, as in this case, the court requires a bond, and the appellant fails to give it, his appeal will not operate as a *supersedeas*. Nevertheless, if he is successful in his appeal, it may affect very substantially his right, not only in regard of the matter of costs, but also in regard of the future liability of himself and sureties on the attachment bond. We, therefore, overrule the motion to dismiss the appeal, and proceed to the consideration of the merits.

This was an appeal by plaintiffs from a judgment quashing an attachment under a plea in abatement. The grounds of attachment were six in number, but only two of them were contested by the evidence at the trial. These were: "That the defendant has fraudulently conveyed or assigned his property or effects so as to hinder or delay his creditors; that defendant is about to fraudulently convey or assign his property or effects so as to hinder or delay his creditors."

We shall first dispose of the assignment of error, that the plea in abatement does not put in issue the truth of the affidavit, and that the plaintiffs' motions to strike it out should have prevailed. This assignment is untenable, for the reason that the plea is drawn in the usual form and is a perfectly good traverse.

It appeared in evidence on the trial of the plea in abatement that, on June 5, 1889, the plaintiffs, B. S. Crawford and W. H. Martin, took into partnership with them in the business of carrying on a retail drugstore at Kahoka, Missouri, the defendant, William H. Greenleaf. This second partnership continued until the fifteenth of September of the same year 1889. At this last date the plaintiffs sold out their interests to the defendant, their copartner. He paid them $300 in cash; he gave them his promissory note for $300, payable January 1, 1890; he agreed to pay all debts contracted by the firm since its organization on June 1 ( *sic* ), 1889; and he assumed and agreed to pay a prior mortgage which had been given by the plaintiffs, Crawford and Martin, on the stock of goods known as "the Mack mortgage," amounting, as was recited in the contract, to $1,600, on June 1, 1889, together with the interest accrued thereon since that date. At the time of this transaction the "Mack mortgage" had been assigned to, and was owned by, B. P. Greenleaf, the father of the defendant. For these considerations the plaintiffs made an absolute tranfer of the stock in trade to the defendant, and placed him in possession. The Mack mortgage

was dated November 12, 1886, and was filed for record
December 9, 1886. On January 28, 1890, the defendant
conveyed the stock of goods above referred to, together
with all the furniture and fixtures, to B. P. Greenleaf,
his father, to indemnify the latter against his liability
on a promissory note made by the defendant to E. L.
Cristy in the sum of $400, dated January 2, 1890, and
payable one year after date, on which B. P. Greenleaf
was security; and also to indemnify B. P. Greenleaf
against liability on another promissory note, executed
by the defendant to Jacob Cartnal on January 3, 1890,
in the sum of $200, on which B. P. Greenleaf was also
security. On January 25, H. M. Hiller and Sarah F.
Hiller, his wife, conveyed by warranty deed to the
defendant and his wife lot 1 of block 43 of Hiller's
addition to the town of Kahoka. On January 23, 1891,
the defendant and his wife conveyed by warranty deed
the same lot to L. M. Greenleaf for the recited consid-
eration of $1,250. At a date not given in the written
indorsement B. P. Greenleaf released, by an indorse-
ment upon the mortgage of the stock of goods which
had been made by the defendant to him as above stated
an undivided one-half interest therein to C. H. Dins-
more, the indorsement reciting that the latter had pur-
chased such undivided one-half interest; and on May
26, 1890, B. P. Greenleaf acknowledged full satisfaction
of this mortgage and released it of record. On the same
date, May 26, 1890, B. P. Greenleaf, who as already
stated was the assignee and owner of the Mack mort-
gage, released, by an indorsement on that mortgage, an
undivided one-half interest in the property therein
described to C. H. Dinsmore. This release likewise
recited that a one-half interest in the property had been
purchased by Dinsmore. This suit was commenced by
attachment on the fifth day of March, 1891.

We shall refer to the other evidence only so far as
necessary to illustrate the observations, which we shall

make upon the several propositions submitted to us in argument by counsel for the plaintiffs.

These are:

I. That the mortgage, introduced in evidence, known as the Mack mortgage, was and is fraudulent and void as *a matter of fact* under the evidence. The untenable nature of this assignment of error will appear from two considerations: *First*, the so-called Mack mortgage was made by the plaintiffs themselves, and not by the defendant; *secondly*, this assignment of error calls for the decision of a question of fact in an action at law, and this court is not a jury. We cannot reverse a judgment because the triers of the fact, or here the court sitting as a jury, have not found, in an action at law, in favor of the party who sustains the burden of proof on an issue of fraud in fact, except in two cases: " *First*. Where there is a conceded or uncontroverted state of facts, with nothing for the jury to pass upon in respect of the credibility of evidence, and where, upon that state of facts, the law draws the inference of fraud as a mere conclusion. *Second*. Where, as in this case, the question is, what is termed fraud in fact as distinguished from fraud in law, and there is a state of facts, equally conceded, upon which the inference of a fraudulent or dishonest intention is so plain that fair-minded men could not differ concerning the conclusion of the fact to be drawn." *Frankenthal v. Goldstein*, 44 Mo. App. 191. It is too plain for argument that the record before us presents no such case.

II. The next proposition advanced in behalf of the plaintiffs is that the defendant assumed the payment of the Mack mortgage as a part of the consideration and purchase price of drugs and stock, and that the plaintiffs thereby became his sureties and, hence, his creditors. This is a correct proposition of law, when properly stated. The plaintiffs were the owners of a stock of goods, on which they had given a mortgage to one

Mack to secure the purchase price thereof. They conveyed the stock of goods to this defendant, and in the conveyance he agreed to assume and pay this mortgage. By this agreement he became in equity, as between himself and the mortgagors, a principal towards his sureties. *Klapworth v. Dressler*, 78 Am. Dec. 69, and numerous cases cited in the note thereto.

III. From this premise counsel for the plaintiffs deduced their third proposition, which is this: "Even if the Mack mortgage is fraudulent and void as matter of law, plaintiffs being creditors as sureties, and as holding notes for the purchase price, have a right to contend, that, as to them, they having lost all control over the stock of drugs, the defendant acted fraudulently in selling the stock and in not applying the proceeds arising from sales to discharge the indebtedness secured by the Mack mortgage." This again calls for the decision of questions of fact; and any argument in favor of the propositions of fact advanced is weakened when it is considered: *First.* That the two notes that are the subject of this suit were notes given by the defendant to the plaintiffs, and were not secured by the Mack mortgage, which mortgage was an antecedent mortgage made by the plaintiffs themselves to one Mack. *Second.* That, prior to the institution of this suit, the Mack mortgage was assigned to B. P. Greenleaf, the defendant's father; that B. P. Greenleaf testifies that he is now, and was at the time when his son, this defendant, purchased the interest of the plaintiffs in the stock of drugs in controversy, covered by the Mack mortgage, the owner of that mortgage; that he knew that his son had sold a half interest in the drugs to Charles Dinsmore for $2,000 at the time, and that his son was paid $2,000, and that none of that money was applied to the payment of the Mack mortgage or intended to be applied thereon; that he knew of the borrowing of the $600 by his son on the stock of drugs, and that none of that was to be applied to the payment

of the Mack mortgage; that he directed that both amounts be applied by the defendant to other debts owed by the defendant to him, and for which he was security for the defendant; that he knew all the time that the defendant by himself, and in connection with Dinsmore, was selling the stock of drugs covered by the Mack mortgage at retail in the usual course of business, and that the proceeds arising therefrom were used in the purchase of other drugs and stock, which were placed in said drug store and sold in the usual course of business at retail; and that none of the proceeds of the sale to Dinsmore, or the $600 mortgage, or the sale of the drugs at retail, were applied to the payment of the Mack mortgage; and that it was all done with his full knowledge and consent.

But the evidence showed that the defendant had conveyed a one-half interest in the stock of goods to his brother-in-law, Dinsmore; that to facilitate this conveyance the defendant's father, B. P. Greenleaf, as assignee of the Mack mortgage, had released from the lien of that mortgage an undivided one-half interest in the stock of goods. The court, as a trier of the facts, was also bound to consider the nature of the property sold and conveyed by the plaintiffs to the defendant,— that it was a retail stock of goods with which the plaintiffs and the defendant had previously been engaged in trade as partners; and the natural conclusion would be that they expected the defendant to continue the sale of the goods at retail in the ordinary course of business. The court was also entitled to consider that, by the terms of this contract of sale, the defendant had assumed the Mack mortgage and had agreed to pay it; but the court was also bound to consider that the instrument recited "this sale to be absolute from and after this date, full possession and control of all said property being this day given to the purchaser." The court was also entitled to take into consideration the fact, that the contract of sale contains no stipulation

that the defendant should apply all or any of the proceeds of the sale of the stock of goods to the payment of the Mack mortgage, or that he should not apply any or all of such proceeds to the payment of his own individual debts. The court was, therefore, entitled to conclude that, in applying the proceeds of such sale to the payment of his individual obligations other than the Mack mortgage, the defendant was violating no contract which he had directly assumed towards the plaintiff. If we consider these premises, it will become plain that the court was not bound as a trier of the fact, to conclude that, in applying the proceeds of the sale of the goods to his debts other than the Mack mortgage, he was committing an act fraudulent as against the plaintiffs. The most that can be said in favor of the position assumed by counsel for the plaintiffs is, that this application of the proceeds of the sale in connection with other evidence in the case, including his declarations of a purpose to leave the state and engage in business elsewhere, was evidence tending to show a fraudulent purpose of hindering or delaying the plaintiffs in the collection of their debts due by the defendant to them. As fairminded men might differ on this question of fraud, the fact that the court did not find that there was such fraud cannot be supported in this court as an assignment of error.

IV. The same observations must be made in respect of the next assignment of error, which relates to the mortgage given by the defendant to his father, B. P. Greenleaf, to secure the latter in obligations which the latter had undertaken for him as his security. It is argued that this mortgage is fraudulent and void as a matter of fact under the evidence, and should have been so declared by the court. And, in support of this argument, attention is called to the fact that it remained unsatisfied upon the records of the county until a date subsequent to the attachment, although it is alleged to have been satisfied some time before. The most that

can be said of this is, that it was an evidentiary circumstance to be considered by the trier of the fact in connection with the other evidence; and that it is not a circumstance on which it can be said that the mortgage was fraudulent as a conclusion of law. This assignment of error, therefore, presents no question for consideration.

V. The next assignment of error reaches back to the merits of all the preceding ones, and it is this: " That for the reasons above stated the plaintiff's declarations of law should have been given." These declarations of law all proceeded upon an erroneous theory. They invoke the opinion of the court upon questions of fact, and not upon questions of law. The office of declarations of law is to discover in what manner the court applies the law to the facts of the case, where the facts are tried by the judge sitting as a jury. If a party desires special findings of fact, then he should prefer his request for such findings in a proper manner under the statute.

It results that the judgment must be affirmed. It is so ordered. All the judges concur.