SCUDDER & COMPANY, Respondents, v. MORRIS, Appellant.

St. Louis Court of Appeals, July 5, 1904.

(Opinion by Bland, P. J.)

1. PRINCIPAL AND SURETY. Where a daughter borrowed money, securing the same by a mortgage on her own land, and turned the proceeds over to her father, the father, mother and daughter all signing the notes given for the debt, and the evidence showed the mother agreed with the daughter that the latter should not lose anything and that she would give her (the daughter) a farm "if there wasn't anything left" and the daughter subsequently paid the debt, after the father had failed in business, as between themselves, the mother was surety for the father in his obligation to the daughter to the extent of the farm.

Scudder & Co. v. Morris.

2. ———: **Statute of Frauds: Stranger to Contract.** The contract relating to suretyship was within the statute of frauds, but the objection that it was within the statute of frauds was not available to a stranger to the contract, the payee in the note.

3. **FRAUDULENT CONVEYANCES: Consideration.** The agreement between the mother and daughter shows that the mother was bound as surety to the extent of the farm and the conveyance of the same to the daughter was founded upon sufficient consideration.

4. ———: ———: **Parol Evidence.** Although the deed recited that the consideration was for "one dollar and love and affection," parol evidence was admissible to overcome the recital and show the real consideration was to make good the mother's promise to convey the farm to the daughter.

(Separate opinion by Goode, J.)

5. **PRINCIPAL AND SURETY: Fraudulent Conveyance: Consideration.** Under the arrangement, the father was the principal debtor on the notes and the mother and daughter were co-sureties. The daughter did not become the creditor of the mother for the amount of the debt, but the arrangement gave her a claim on her mother for protection against ultimate loss and for a consideration of the farm, if that should become necessary to protect her, and the agreement was sufficient consideration for the conveyance of the farm to the daughter.

6. **FRAUDULENT CONVEYANCES: Voluntary Conveyance: Attachment.** The daughter, not being a party to the suit, is not affected by it and the issue is whether the mother, the defendant, either actually intended to hinder and delay her creditors or execute a voluntary conveyance which had the effect of hindering and delaying them.

7. ———: ———: ———. A voluntary conveyance is one executed without a consideration or, in some circumstance, for a consideration much less than the value of the property conveyed.

8. ———: **Statute of Frauds: Consideration.** An agreement within the statutes of frauds is a sufficient consideration to prevent a conveyance, executed in good faith, from being voluntary and fraudulent as to creditors of the grantor. The statute of frauds can not be utilized by a stranger to a contract to set it aside, if the parties to it choose to perform notwithstanding the statute.

Appeal from Franklin Circuit Court.—*Hon. J. W. McElhinney*, Judge.

REVERSED AND REMANDED.

*John W. Booth* for appellant.

(1)   As between the obligors in a note, parol evi-dence is always admissible to show liability as prin-cipals or sureties.   Garrett v. Ferguson, 9 Mo. 124;. Bank v. Wright, 53 Mo. 153.   (2)   Josephine Burr ex-ecuted the notes to Brock on a promise of appellant that Josephine should not lose anything thereby.   Appellant and Charles M. Morris at the same time signed said notes with said Josephine, and thereby appellant with said Charles M. Morris, secured the $3,000 for the use of said Charles.   This was a sufficient consideration for the promise of appellant to indemnify said Josephine; and it is immaterial that appellant by her promise, se-cured the money for Charles M. Morris instead of for herself.   A direct personal benefit is not an indispensa-ble element of a legal consideration for a contract. Robertson v. Findley, 31 Mo. 388.   The statute of frauds can not be availed of to invalidate a contract by one not a party to the contract.   Tool Co. v. Spring Co., 93 Mo. App. 530, 67 S. W. 967; Railroad v. Clark, 121 Mo. 169, 25 S. W. 192, 906.

*Jesse M. Owen* and *Alphonso Howe* for respond-ents.

(1)   This case was tried by the court sitting as a jury, and, therefore, its findings of facts are conclusive if there is substantial evidence to support the verdict. The same rule applies as in jury trials, and a case will not be reversed unless there is no evidence tending to establish the fact found.   Plow Co. v. Sullivan, 158 Mo. 447, 59 S. W. 1005; James v. Insurance Co., 148 Mo. 16, 49 S. W. 978; Cohn v. Kansas City, 108 Mo. 387, 18 S. W. 973.   (2)   Conveyances based on love and af-fection, made by an insolvent, are voluntary and fraud-

Scudder & Co. v. Morris.

ulent as to existing creditors. Snyder v. Free, 114 Mo. 365, 21 S. W. 847; Gamble v. Johnson, 9 Mo. 597; Needles v. Ford, 167 Mo. 495, 67 S. W. 240. (3) The very deed itself is conclusive against appellant. It recites that the conveyance was made "in consideration of one dollar, and love and affection to them paid," etc. Benne v. Schnecko, 100 Mo. 251, 13 S. W. 82; Hoffman v. Nolte, 127 Mo. 121, 29 S. W. 1006; Bucks v. Moore, 36 Mo. App. 529; Bump, Fraudulent Con. (3 Ed.), 306. (4) We are not concerned in this case about whether or not there was a moral obligation existing between Mrs. Morris and her daughter in this Brook transaction. Courts do not enforce mere moral obligations. Price v. Kane, 112 Mo. 419, 20 S. W. 609; Musick v. Dodson, 76 Mo. 627.

### STATEMENT.

The suit is to recover on the following promissory note:

"$390.81.                    St. Louis, January 3, 1901.

"On April first after date we, or either of us, promise to pay to the order of James W. Scudder & Co. three hundred and ninety 81-100 dollars, at their office in St. Louis. Value received.

"C. M. MORRIS,
"MARY S. MORRIS.

"Indorsed "4—25, pd. $117.24."

In aid of the suit plaintiffs sued out a writ of attachment alleging as a ground therefor that "defendant had fraudulently conveyed or assigned her property or effects so as to hinder and delay her creditors." The writ of attachment was served by the sheriff by seizing all the right, title and interest of defendant in and to the following described lands situated in Franklin county, Missouri: "The west half of the northeast quarter of section 1, township 42, range 2 east, contain-

ing 82 89-100 acres; the southwest quarter of the south-east quarter of section 36, township 43, range 2 east, containing 40 acres, and the west part of the southeast quarter of the southeast quarter of section 1, township 42, range 2 east, containing 18 acres, more or less.'' Defendant filed a plea in abatement to the attachment and the issues thereon were submitted to the court who found for the plaintiffs and sustained the attachment. Defendant filed a motion for new trial which was over-ruled. No defense was made to the suit on the note, and judgment on the merits was given for the balance due on the note. Defendant in due time and form saved her exceptions and appealed the cause to this court.

To sustain the attachment plaintiffs offered the following evidence:

The record of a deed from Mary S. Morris and Charles M. Morris, her husband, to Josephine Burr, dated April 3, 1901, and recorded in the office of recorder of deeds of Franklin county, Missouri, in book 53, at page 637, conveying to Josephine Burr, in consideration of one dollar and love and affection, the land attached in this cause and certain other land situate in Jefferson county, Missouri.

Charles M. Morris, sworn and examined as a witness on the part of plaintiffs, testified as follows:

''I am the husband of defendant. I do not know the value of the land conveyed by my wife and myself by the deed of date April 3, 1901, in evidence in this case, to Josephine Burr. The land came into my wife's possession eighteen or twenty years ago, I believe. She then paid for it $3,000. Mrs. Josephine Truth, formerly Mrs. Josephine Burr, is now the owner of that land. She became the owner of it about a year ago— I can not remember the date. The consideration of the conveyance of the land to Josephine Burr, now Josephine Truth, was the payment of $3,000, money she had loaned me and my wife.

"Cross-Examination.

"She borrowed the money from the Mississippi Valley Trust Company, on a deed of trust, and the money was turned over to me. This is the deed of trust."

Defendant here offered in evidence the deed of trust referred to by the witness. Said deed of trust is dated January 18, 1899, and by it, on that date, Josephine M. Burr (formerly widow of Geo. C. Burr, but then unmarried) conveys lots 15, 16, 17, and 18 of Spencer Smith's subdivision of the town of Kirkwood, St. Louis county, Missouri, to the Mississippi Valley Trust Company, with power of sale, to secure payment of seven negotiable promissory notes, in said deed of trust described, each payable to the order of James E. Brock. And defendant then offered in evidence the notes secured by said deed of trust, the same being seven negotiable promissory notes, each of date January 18, 1899, each expressed to be for value received, and each payable to the order of James E. Brock, and each bearing interest from its maturity at the rate of eight per cent per annum, each payable at the Mississippi Valley Trust Company, St. Louis, Mo. Of which notes the principal note is for payment of $3,000 and payable January 18, 1902, and the remaining six are for semi-annual installments of interest on the principal note, and are each for the sum of $90, and are payable, respectively, one July 18, 1899, one January 18, 1900, one July 18, 1900, one January 18, 1901, one July 18, 1901, and the last January 18, 1902, all executed by Josephine M. Burr and Charles M. Morris and Mary S. Morris.

Witness further testified as follows; to-wit:

"The notes to James E. Brock were paid; the money to pay them was secured by a new loan effected on the same property by a deed of trust. This is a certified copy of the deed of trust given to secure that new loan."

Defendant then offered the certified copy, referred to by the witness, in evidence. Said certified copy is a duly certified copy from office of recorder of deeds of St. Louis county, Missouri, of a conveyance of said lots in the town of Kirkwood, of date January 22, 1902, made by Josephine M. Burr, to Bernard C. Farrar, for the benefit of Coburn K. Farrar, with power of sale, to secure payment of seven promissory notes, each dated January 22, 1902, and payable to the order of Coburn K. Farrar, consisting of one principal note for the sum of $3,500, payable three years after its date, and six semiannual interest notes each for the sum of $105, and payable, respectively, in six, twelve, eighteen, twenty-four, thirty and thirty-six months after date, and each executed by Josephine M. Burr. Which deed of trust, as appears by said certified copy thereof, as so introduced in evidence, was filed for record in the office of recorder of deeds, of St. Louis county, Missouri, January 27, 1902.

Witness Charles M. Morris, further testified as follows:

"The money borrowed on the deed of trust to the Mississippi Valley Trust Company all went to me; Josephine Burr was only acting there to raise the money for me. When the second deed of trust was executed the money was used to pay off the first deed of trust; the increase in the amount of the second deed of trust comes from interest, taxes, commissions and insurance. Robert M. Noonan negotiated the deal with Mr. Farrar.

"The conveyance from my wife, in which I joined, to Josephine Burr, was because she borrowed the three thousand dollars and turned it over to me. I used that money in the grocery business in Kirkwood, and lost it, and was unable to repay it; and my daughter being security for that debt my wife executed the deed to her in satisfaction of it. Mrs. Josephine Burr, now Mrs. Josephine Truth, is the daughter of myself and wife,

Mary S. Morris. The land conveyed by Josephine Burr was bought for her by her mother—that is, her mother gave her the money to—but it was fifteen or twenty years ago.

"Re-examination.

"The land never did belong to me. Mrs. Morris' name, and my name, and Mrs. Burr's name, were all on the notes secured by the deed of trust to the Mississippi Valley Trust Company, and, when I failed in Kirkwood, Mrs. Morris deeded Mrs. Burr the farm in satisfaction of the debt that I owed Mrs. Burr; she considered that her and I both owed it as her name was on the note. Mrs. Morris did not get any of the $3,000."

B. G. Farrar, witness for defendant, testified as follows:

"I am named as trustee in the deed of trust, a certified copy of which has been offered in evidence. The notes secured by that deed now belong to a sister-in-law of mine. Of my own knowledge I know that the money represented by those notes was loaned as indicated by the deed of trust."

Charles M. Morris, being recalled, testified as follows:

"I failed in January, February or March, 1901, and made an assignment for the benefit of my creditors. I paid thirty per cent to creditors. Scudder & Company got this on their note."

Mrs. Josephine Truth, being sworn and examined as a witness on the part of defendant, testified as follows:

"My notes were not presented against the assignment assets. Mamma promised me at the time that I made this deed of trust and signed the notes that I should not lose anything. She said she would give me the farm if there wasn't anything left for me.

"Cross-Examination.

"The real consideration for the farm was three thousand dollars. I did not pay the loan. I just renewed it."

The court gave the following instructions at the instance of plaintiffs:

"1. If the court, sitting as a jury, should believe and find from the evidence that on or about the eighteenth of January, 1899, one Charles M. Morris borrowed from the Mississippi Valley Trust Company the sum of $3,000, and to secure the payment thereof, he, as principal, and the defendant, Mary S. Morris, and one Josephine M. Burr, as his sureties, executed and delivered their promissory notes of that date, offered in evidence, and the said Josephine M. Burr, for the same purpose, executed and delivered her deed of trust of the same date, offered in evidence, conveying her lands in trust to secure payment of said notes; that the defendant then was and is now the wife of said Charles M. Morris, and said Josephine Burr is their daughter; that the said sum of $3,000 was so borrowed for the said Charles M. Morris, and was by him received and used in his business; that at the time of the said transaction the defendant promised the said Josephine Burr that she, the defendant, would see that she, the said Josephine Burr, should not lose anything by said transaction, and that the defendant would give the said Mrs. Burr the farm, meaning thereby the lands attached in this suit, if there was not anything (or anything else) left for her, the said Mrs. Burr; that the said promise of the defendant to Mrs. Burr was not in writing, or signed by the defendant, or anyone for her; that the defendant and Mrs. Burr were not, as between themselves, principal and surety upon said notes; that thereafter the said Charles M. Morris and the defendant executed and delivered to the plaintiffs, for the amount

thereof borrowed from the plaintiffs, the note here sued upon and offered in evidence, payable April 1, 1901; that the said Charles M. Morris failed in business and became insolvent in January, February or March, 1901; that on or about the second day of April, 1901, the defendant and her husband, the said Charles M. Morris, by their deed of that date offered in evidence, conveyed to the said Josephine Burr the said farm, or lands, attached in this suit; that said farm, so conveyed, was at the time of such conveyance the property of the defendant, and of the value of $3,000; that there was no consideration for the said conveyance from the defendant to the said Mrs. Burr, other than love and affection, and the said promise from the defendant to the said Mrs. Burr, and the obligation between them by reason of the facts aforesaid; and if the court further finds and believes from the evidence that a large part of said note sued upon still remains unpaid, and that the effect of said conveyance to Mrs. Burr, from the defendant, was and is to hinder and delay plaintiff in the collection of the balance due on said note sued upon; then, in the absence of any evidence to show that at the time of her said conveyance to Mrs. Burr the defendant still retained sufficient property to meet her legal obligations, or to satisfy the said note upon legal process for the collection of the same, the court should find that the said conveyance from the defendant to the said Mrs. Burr was, at least so far as the difference between the sum of $3,000 and one-half of said indebtedness of $3,000 secured by said note and deed of trust, voluntary and fraudulent as against the plaintiffs, and should find the issues in favor of the plaintiffs.

"2. If the court should believe from the evidence that the sum of $3,000, represented by the notes of Josephine Burr, Charles M. Morris, and the defendant, dated January 18, 1899, was borrowed upon the said notes and the deed of trust of said Mrs. Burr, of the same date, securing the same upon her property, by and

for the said Charles M. Morris, and received and used by him, then the mere fact that at the time of the said transaction the defendant promised the said Mrs. Burr that she, the defendant, would see that she, the said Mrs. Burr, should not lose anything by executing said notes and deed of trust, would not be conclusive evidence that, as between themselves, the defendant was principal debtor and the said Mrs. Burr her surety upon said notes. Before the court can find that such relation of principal and surety existed between them the court must believe and find from all the evidence that at the time of said transaction it was mutually understood between the defendant and the said Mrs. Burr that, as to the said notes and the said debt of said Mrs. Burr that, thereby, the defendant was the principal debtor primarily liable for the same, as far as the said Mrs. Burr was concerned, and the said Mrs. Burr was liable at the request of the defendant and as her surety, and not merely as the surety of the said Charles M. Morris."

And refused the following asked by defendant:

"1. If, from the evidence, the court finds that Josephine Burr borrowed the sum of $3,000 from the Mississippi Valley Trust Company, and that for the payment thereof, with interest, the notes of date January 18, 1899, read in evidence, signed by said Josephine and by Charles M. Morris and Mary Morris, were executed and delivered; and that to secure payment of said notes said Josephine executed and delivered the deed of trust dated January 18, 1899, read in evidence in this case, and thereby conveyed the lands of said Josephine in trust to secure payment of said notes; and that said Josephine borrowed said money for her father, the said Charles M. Morris, and that he received and used the money so borrowed; and that the said Mary Morris, at the time of said transaction, promised said Josephine that she, the said Mary, would see that she, the said Josephine, should not lose anything by the said transaction; then, as between themselves, the

said Josephine was but a surety on said notes, and both the said Morrises were, as to said Josephine, principals in said notes, and, as between said Charles M. Morris and said Mary, said Charles M. Morris was principal debtor, and said Mary was but a surety. And, if the court further finds from the evidence that, after said Josephine executed said notes and deed of trust, said Charles M. Morris failed, and became insolvent and unable to in any way indemnify said Josephine against loss by reason of her liability on said notes, and that to indemnify said Josephine against loss by reason of said notes and deed of trust, executed and delivered to said Josephine the deed of conveyance read in evidence by the plaintiffs in this case, and that the property so conveyed was not more than sufficient in value to indemnify said Josephine, then said conveyance to said Josephine was a lawful preference, and the court should find the issues on the plea in abatement in this cause for the defendant.''

BLAND, P. J. (after stating the facts).—The instructions given and refused by the trial court show that the court was of the opinion that the evidence did not show or tend to show that defendant and Mrs. Burr, as between themselves, stood in the relation of principal and surety as to the Brock note for three thousand dollars borrowed and turned over to C. M. Morris and that there was no evidence showing or tending to show the consideration for the deed from the defendant to Mrs. Burr was other than that expressed in the deed itself, that is ''one dollar and love and affection.'' The three thousand dollar note and the interest notes were all signed by Mrs. Burr, C. M. Morris and the defendant, and secured by Mrs. Burr's deed of trust on her individual real estate. The evidence shows that the money was borrowed to be handed over to C. M. Morris and that he got all of it; that the principal and interest notes were paid by Mrs. Burr, the money for that pur-

pose having been raised by the loan from C. K. Farrar on the individual note and deed of trust of Mrs. Burr. Mrs. Burr testified that her mother, the defendant, promised her at the time she procured the loan of three thousand dollars from the Mississippi Valley Trust Company that she should not lose anything, that she would give her the farm "if there wasn't anything left," for her, and that the real consideration for the conveyance from her mother to her was three thousand dollars. The date of the note and deed of trust to Brock was January 18, 1899. The deed from defendant to Mrs. Burr is dated April 3, 1901. The Farrar note for thirty-five hundred dollars is dated January 22, 1902. C. M. Morris testified that he failed in business January, February or March, 1901. It thus appears that the deed conveying the farm to Mrs. Burr was executed after C. M. Morris' failure and prior to the payment of the three thousand dollar note to the Mississippi Valley Trust Company but at a time when it was apparent, to use Mrs. Burr's own language, "there wasn't anything left" for her, and when the contract of defendant, if there was one, to convey the farm to Mrs. Burr, had matured.

The question in the case is, was there a contract whereby the defendant obligated herself in law or equity to convey the farm to Mrs. Burr, in the event C. M. Morris failed in business and became unable to pay the three thousand dollars which Mrs. Burr had raised for him by a deed of trust on her property. In the light of the evidence, it is clear that C. M. Morris became indebted to Mrs. Burr in the sum of three thousand dollars. The evidence of this indebtedness is not shown by any of the notes or deeds of trust offered in evidence, but by the parol evidence offered at the trial which shows that the money was procured from the Mississippi Valley Trust Company on the security furnished by Mrs. Burr; that Morris got the money from Mrs. Burr and the latter paid the note on which this

money was raised. On the face of the note (the three thousand dollar one) Mrs. Burr, C. M. Morris and defendant were all principals. As between themselves, in the light of the parol evidence, it was primarily the duty of C. M. Morris to pay the three thousand dollar note, and the defendant stood in the relation of surety for him to Mrs. Burr for its payment, if there was an express contract to that effect. The law is that no contract to answer for the debt or default of another can be created except in writing and the relation of principal and surety can not be made out by mere implication, and that the relation arises only in contract and to be binding must be in writing. Ingersoll v. Baker, 41 Mich. 48. There is no such writing to be found in the evidence. But it is contended by the defendant that the objection that the contract of suretyship was not in writing as required by the statute of frauds is not available to plaintiffs, who are strangers to the contract. It is unquestionably the law of this State that the plea of the statute of frauds is not available to a stranger to a contract to show that the contract is invalid because it is within the statute of frauds. Roth Tool Co. v. Champ Spring Co., 93 Mo. App. 1. c. 536, 67 S. W. 967, and cases cited. According to the parol testimony C. M. Morris was primarily obliged to Mrs. Burr to pay the Brock note. The defendant joined with him in its execution and at the time promised Mrs. Burr to save her harmless by conveying her the farm as indemnity, in the event she should have to pay the note. This evidence, we think, shows that the defendant agreed with Mrs. Burr to be bound as surety for the payment of the Brock note to the extent of the farm. Whatever may be said of the legal effect of this understanding, a court of equity ought not to hesitate to look at the transaction in its proper light, divested of technicalities, and pronounce the conveyance from the defendant to Mrs. Burr just and proper, in contemplation of equity, if founded on a good and valid consideration. Burnside

v. Fetzner, 63 Mo. l. c. 111; Crawford v. Greenleaf, 48 Mo. App. 590. The consideration for the contract of suretyship was concurrent with the contract by which C. M. Morris got the three thousand dollars and is supported by the consideration for the latter contract. Robertson v. Findley, 31 Mo. 384; Fullerton Lumber Co. v. Calhoun, 89 Mo. App. 209; Cooke v. Railway, 57 Mo. App. l. c. 473; Ring v. Kelly, 10 Mo. App. l. c. 413. If the parol evidence is sufficient to overcome the recital in the deed, that the consideration was for "one dollar and love and affection" and to show the real consideration was to make good defendant's promise to convey the farm to Mrs. Burr, in the event the latter had to pay the Brock note, we think the conveyance ought to be held valid as against the other creditors of the defendant.

Judgment reversed and cause remanded. *Reyburn* and *Goode, JJ.*, concur, the latter in a separate opinion.

## SEPARATE OPINION.

GOODE, J.—Though I agree that the judgment in this case ought to be reversed and a new trial ordered, I do not think the defendant and her daughter, Mrs. Burr, bore to each other the relation of principal and surety on the notes to Brock. The principal debtor and the person primarily liable for those notes was C. M. Morris, and the defendant and Mrs. Burr were cosureties for him. The evidence does not go toward proving an agreement between the latter parties that Mrs. Burr was to sign as surety for her mother who was to be treated between themselves as a principal; but tends to prove that Mrs. Burr was induced to lend the credit of her name and the security of her Kirkwood lots to her father, by her mother's promise to indemnify her against loss and to convey to her the farm in controversy if no other property was left for indemnity.

The outcome of that arrangement, when Mr. Morris failed to pay the Brock notes and the burden of taking care of them fell on Mrs. Burr, was not to make the latter creditor of her mother for the amount of the debt, but to give her a claim on her mother for protection against ultimate loss and a conveyance of the farm if that act should become necessary to protect her. Mrs. Burr paid the debt and is entitled, regardless of the asserted agreement for indemnity, to contribution from her mother as a cosurety. This fact demanded attention, as furnishing a consideration for the conveyance of the farm, and the defendant's obligation to her daughter because of it was properly recognized in the first declaration of law given for the plaintiffs. No error was committed in that regard and the appeal must fail therefore, unless the declarations were erroneous in not stating correctly the legal effect of the arrangement between the defendant and her daughter for the latter's indemnity, if such an arrangement was made. As this is an action at law, it is immaterial that equity might construe the arrangement to have created the relation of principal and surety in order to prevent injustice. For the present purpose no such relation can be enforced unless it is made out fairly by the evidence and I think this is not done. Nevertheless, if the defendant agreed to hold her daughter harmless as surety on the notes to Brock, and if Mrs. Burr was thereby induced to sign them, as there is evidence to prove, the authorities infra show that the agreement was a sufficient consideration for the conveyance of the farm by the defendant and relieves the act of a voluntary and fraudulent character if it was done in good faith—that is, for the purpose of carrying out the agreement and not with the intention of hindering and delaying the defendant's creditors in the collection of their debts. As the defendant possessed no other property to which her creditors could look, the ground of attachment would be made good by proof, either that the conveyance was

executed for the purpose of hindering and delaying said creditors, or, if the defendant cherished no fraudulent intention, that it was voluntary. Of course, the land would not be finally lost to Mrs. Burr in the first contingency unless she participated in the fraudulent intent, and in neither contingency can her claim be affected by this suit, to which she is no party. The question now is as to whether the defendant gave cause for attachment, which depends, as stated, either on proof that she actually intended to hinder and delay her creditors, or that she executed a voluntary conveyance which in legal contemplation, had the effect of hindering or delaying them.

The first declaration of law given at plaintiffs' request, proceeds on the theory that the conveyance was voluntary even if the facts in testimony concerning the defendant's promise to hold Mrs. Burr harmless as surety on the Brock notes, and to convey to the latter the farm if there was nothing else left for her, was true. A voluntary conveyance is one executed without a consideration; or, in some circumstances, for a consideration much less than the value of the property conveyed. 14 Am. and Eng. Ency. Law (2 Ed.), 298, 301; Oberneir v. Tresselor, 19 Mo. App. 519; Lionberger v. Baker, 88 Mo. 447. If the defendant's alleged agreement to indemnify Mrs. Burr was such a consideration for the conveyance of the farm as the law will tolerate in any event, it was an adequate consideration; for the farm was worth about three thousand dollars, the amount which Mrs. Burr paid on the Brock notes. The argument brought forward against said agreement as a consideration is that it was verbal and within the statute of frauds, as it was an undertaking by the defendant to answer for the debt of her husband and a memorandum was essential to render it binding. But if the agreement was made, it was executed before the inception of this action, the defendant not choosing to avail himself of the statute of frauds to evade it. The question is

then, was the transfer of the farm a voluntary or gratuitous one, lacking any valuable consideration to support it, because the agreement on which it was based was obnoxious to the statute of frauds and could not have been enforced had the defendant resisted enforcement on that ground. In other words, is an agreement within the statute of frauds a sufficient consideration to prevent a conveyance executed in good faith from being voluntary and fraudulent as to creditors of the debtor? It is the right, but not the duty, of the obligor of such an agreement to avail himself of the statute, and a conveyance in performance of the agreement is valid. First National Bank v. Bertschy, 52 Wis. 438; Hyde v. Chapman, 38 Wis. 391; Lefferson v. Dallas, 20 Ohio St. 68; Keen v. Kleckner, 42 Pa. St. 529; Sackett v. Spencer, 65 Pa. St. 89; Gullman v. Perrie, 47 Miss. 131; Clark's Admr. v. Rucker, 7 B. Mon. 583; Livermore v. Northrup, 44 N. Y. 107; Stowell v. Hazlett, 57 N. Y. 637; Creswell v. McCaig, 11 Neb. 222. The statute of frauds may not be utilized by a stranger to a contract to set it aside, if the parties to it choose to perform notwithstanding the statute. The above cases are all in point and in some of them the facts greatly resemble those before us. In the note in Hageman v. Buchanan, 14 Am. St. 732, on page 741, we find this statement of the law on the subject:

"If a transfer is made to discharge an obligation which the debtor might have escaped by pleading the statute of frauds, it must be deemed supported by a valuable consideration. The cases seem to establish the rule that a conveyance or security given for a debt or *in fulfillment of a contract which could have been recovered or enforced in an action were it not for some legal maxim or statutory provision which prevents such recovery by reason of the contract not being in the form prescribed by the statute*—in other words not being evidenced in the manner prescribed by law—is not a voluntary conveyance or security, and therefore fraudulent

and void as to creditors, if the evidence shows there was a sufficient consideration for the debt or promise to support the same were it not for the statutory requirements.''

This rule takes no account of the purpose of the statute of frauds to require written evidence of certain agreements, and too, may open opportunities for collusive and fraudulent transfers. But it is established by the adjudged cases.

It follows that if the defendant agreed to indemnify Mrs. Burr and executed the conveyance solely to carry out that agreement, and not with an intent to hinder and delay creditors, the ground of attachment was not established. But if no such agreement was in fact made, or if it was, but the defendant transferred the farm, not for that reason, but for the purpose of hindering or delaying her creditors, the attachment was rightly brought. The declarations of law show that the trial court did not dispose of the plea in abatement on these theories, but held, in effect, that the alleged agreement did not deprive the conveyance of the farm to Mrs. Burr of a voluntary character.

It might be said that the defendant adopted in the declarations asked by her the theory that the transfer was voluntary and fraudulent unless defendant and her daughter were principal and surety; but as the plaintiffs' declarations propounding that proposition had been already given before the defendant requested any declaration and as defendant's declaration merely declared that the agreement testified to create the relation of principal and surety, and did not declare that its validity depended on the existence of such a relationship, the cause ought to be remanded for another trial consistent with the above views.