**DOERFLINGER REALTY COMPANY, a Corporation (Plaintiff), Respondent,**

v.

Robert G. FIELDS and Lucinda M. Fields (Defendants), Appellants.

No. 29029.

St. Louis Court of Appeals.

Missouri.

July 19, 1955.

Rehearing Denied Sept. 9, 1955.

610

by plaintiff was given an exclusive agency for sixty days to sell the property in question. As compensation, defendants agreed to pay plaintiff a 5% commission on the selling or exchange of the property "whether said sale or exchange is brought about by said Doerflinger Realty Company, the owner, or any other person or agent while this contract is in force." The contract further provided: "If the property is sold within two months from the expiration date of this contract to a purchaser to whom the property was submitted by the Doerflinger Realty Company during the time this contract was in force, I/we agree to pay them the regular Real Estate Exchange Commission of 5%."

Thereafter, plaintiff advertised the property and submitted it to its customers. Through the efforts of Thomas C. Ferguson, a salesman for plaintiff, Mr. and Mrs. Walter Schmitt became interested in the property and, on December 11, 1949, signed a contract to purchase said property. The contract was signed by defendants on December 13, 1949. This contract provided as follows:

Adolph G. Schumacher, Clayton, for appellants.

Henry Ebenhoh, Walter S. Berkman, St. Louis, for respondent.

ANDERSON, Presiding Judge.

This is a suit by Doerflinger Realty Company, a corporation, against defendants, Robert G. Fields and Lucinda M. Fields, husband and wife, for a commission alleged to have been earned by plaintiff in connection with the sale of certain real estate. There was a verdict and judgment below in favor of plaintiff, and defendants have appealed.

Defendants were the owners of certain real estate and improvements located at 404 Caroline Street in the City of Kirkwood, Missouri. Plaintiff is an incorporated real estate agency with its office at 1021 North Kirkwood Road, Kirkwood, Missouri.

On November 3, 1949, defendants entered into a listing contract with plaintiff where-

"The total price is $6800.00, Sixty Eight Hundred Dollars, * * * to be free and clear or to be made so by the undersigned seller at closing of this sale. * * * This offer is subject to the Doerflinger Co. being able to sell the Schmitt property at 101 Madison Avenue, Webster Groves, within 30 days after the date that this contract is accepted by seller. The Schmitt property to be sold at a price that they will agree to take or accept.

"This contract to be binding when and if signed by the other party within 5 days. Sale is to be closed at office of Doerflinger Realty Co., 1021 N. Kirkwood Rd., Kirkwood, Mo. on or before Jan. 31, 1950."

At the time of signing the contract the Schmitts deposited $50 as earnest money with plaintiff.

Plaintiff was unable to sell the Schmitt property within the thirty days specified in the contract. The Schmitts then demanded a return of their earnest money deposit. Plaintiff complied with this request and returned the $50.

Mr. Edgar E. Parent, office manager for plaintiff, testified that during the thirty-day period a contract was obtained to sell the Schmitt property subject to securing a "G. I." loan, but before the loan was obtained the listing contract expired. He further testified that plaintiff was thereafter informed that Mr. Fields no longer wanted to sell his property, and for that reason the fifty dollars was returned to the Schmitts. Mr. Parent testified: " * * * if a person no longer wants to sell and the purchaser no longer wants to buy and our contract is void, we hand back the earnest money."

Thereafter, the Schmitts sold their Webster Groves property and again opened negotiations directly with the Fields for the purchase of their property. These negotiations resulted in a sale of the Fields' property to the Schmitts. The deed to the property was dated March 28, 1950, and, according to defendants' evidence was delivered to the Schmitts on May 12, 1950, at which time the purchase price of $6,800 was paid.

The evidence is conflicting as to whether the agreement to sell was made within sixty days after the expiration of the original listing contract. That contract, by its terms, expired on January 2, 1950. Mr. Schmitt testified that after Mr. Fields told him that his listing contract with plaintiff had expired, and after he got back his fifty dollars from plaintiff, he went back to see Mr. Fields in an attempt to buy the house. He stated that Mr. Fields at that time wanted a larger down payment. The amount wanted was $200 or $250. Schmitt testified that this amount was paid for him by his father-in-law, Mr. Landwehr. Mr. Fields gave him a receipt for this money. This receipt was not produced at the trial. Mr. Schmitt testified that he did not remember the date that his down payment was made, but that it was no later than February 1, 1950.

Mr. Edgar E. Parent, office manager of the Doerflinger Realty Company, testified:

" * * * in the latter part of January of 1950 I visited Mr. Fields and his wife. I actually only talked to Mr. Fields. * * * I informed him that I knew he was selling his property to a client whom we had submitted the property to and we were due our commission, and Mr. Fields informed me that he felt that our listing had expired and that we had no commission coming on that basis. I pointed out to him that we did have a sixty days clause which complied upon the Schmitts, the purchaser, and he pointed out that—in his words, said, 'I feel you are just bluffing. Otherwise you would not be here talking to me.' I said, 'Look, I feel we will save a lot of trouble and a lot of money if you will carry through in this thing in the manner it should be taken through. Otherwise, I will have to submit this to our attorney.' He said, 'You just go ahead and do whatever you think you can do,' and that was the end of our conversation.

* * * * * *

"Q. When was it you said here a moment ago that you called on Mr. Fields to see him about this contract? A. I would say the latter part of January. I know there was snow on the ground. * * * He said he felt our listing was out, that the contract was out, and we had no commission coming."

On cross-examination Mr. Parent testified that he could not remember the exact date he talked with Mr. Fields at his home in Kirkwood, but thought it was the latter part of January, 1950; that it could have been in February, but not later than February. The witness further stated that Mr.

Fields did not deny selling his property to the Schmitts.

Mr. Fields denied that he had any conversation with Mr. Parent in January or February, 1950, at his home in Kirkwood. He further stated that it was the latter part of March, 1950, that he got the $250 earnest money from Mr. Landwehr. He further testified that he gave no receipt for this money.

Mrs. Fields testified the $250 earnest money was given to them on March 28, 1950, the day the deed was dated. She stated that the deed was thereafter delivered on May 12, 1950, at which time the Schmitts paid the balance of the purchase price. She stated that she had never seen Mr. Parent before, either at her home in Kirkwood or any other place.

Appellants' first point is that the court erred in failing and refusing to sustain their motion for a directed verdict. In support of this assignment it is urged that there was no evidence that the property in question was sold within two months from the expiration date of the listing contract to a purchaser to whom the property had been submitted by plaintiff. There is no merit to this contention.

Mr. Schmitt testified that, through his father-in-law, he made a down payment on the purchase of this property no later than February 1, 1950. Mr. Parent testified that he called on Mr. Fields in January or February, 1950, at which time he told Mr. Fields that he knew appellants were selling their property to the Schmitts, and made demand for the commission which he claimed was due respondent by reason thereof. He stated that Mr. Fields did not deny that the property was being sold to the Schmitts.

From the foregoing evidence a jury could reasonably find that prior to March 2, 1950, a contract of sale was entered into between appellants and the Schmitts for the sale of the property in question. Under such circumstances there was a sale of the property to the Schmitts. Knisely v. Leathe, 256 Mo. 341, loc. cit. 375, 166 S.W. 257; and it is immaterial that the contract was not consummated until after March 2, 1950.

Respondent was entitled to its commission when appellants accepted the Schmitts as purchasers by entering into a contract of sale with them. Knisely v. Leathe, 256 Mo. 341, 166 S.W. 257; Knisely v. Leathe, Mo.Sup., 178 S.W. 453; Lombard v. Sills, 170 Mo.App. 555, 157 S.W. 93; Real Estate Enterprises v. Collins, Mo. App., 256 S.W.2d 286; Isaac T. Cook Co. v. Craddock-Terry Co., Mo.App., 109 S.W. 2d 731. And the fact that it is not shown that the contract was in writing, as required by the statute of frauds, does not, as appellants contend, deprive the agent of its commission. The statute is inapplicable for it is well established that if both parties to a contract waive the requirements of the statute and carry the contract into execution, a third party cannot be heard to question its effect. Bauer v. White, 225 Mo.App. 270, 29 S.W.2d 176; B. Roth Tool Co. v. Champ Spring Co., 93 Mo.App. 530, 67 S.W. 967; James W. Scudder & Co. v. Morris, 107 Mo.App. 634, 82 S.W. 217.

Appellants also complain of Instruction No. 1, given by the court at plaintiff's request. By said instruction the jury were directed to find for the plaintiff if they found that the defendants sold their property to the Schmitts within two months after the listing contract expired. It is urged that the instruction was erroneous because: (1) there was no evidence of a written contract for the sale, as required by the statute of frauds, Section 432.010 RSMo 1949, V.A.M.S.; and (2) there was no evidence of a contract of sale between appellants and the Schmitts within said sixty-day period. What we have said in disposing of appellants' first point is applicable to the points raised in this assignment. The assignment is without merit.

The court, at plaintiff's request, gave Instruction No. 2, which is in words and figures as follows:

"The court instructs the jury that if you find in favor of the plaintiff,

you shall award it the sum of $340.00 and you may add interest at. the rate of 6% per cent from March 28, 1950, to date."

It is urged that the instruction is erroneous for the reason that interest in cases of this character can only be recovered from the date of demand, which date was not shown.

Section 408.020 RSMo 1949, V.A.M.S., provides:

· "Creditors shall be allowed to receive interest at the rate of six per cent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made * * *."

 Money is due and payable where there is a legal obligation to pay it and the time set for its payment has arrived. Swanson v. Spencer, 177 Mo.App. 124, 163 S.W. 285. The time set for its payment may be fixed either by the instrument, or by the law itself. When not fixed by the instrument the law will deem the amount due and payable when the party has fully performed his obligations under the contract and nothing remains to be done but payment to him of the amount due. From that date he is entitled to interest, under the statute, though no demand is made. Larson v. Crescent Planing Mill Co., Mo.App., 218 S.W.2d 814; Cupples Co., Manufacturers v. Mooney, Mo.App., 25 S.W.2d 125; Neosho City Water Co. v. City of Neosho, 136 Mo. 498, 38 S.W. 89.

 Plaintiff's claim in the case at bar is based on a written contract for the payment of money, and is clearly within the statute. The commission was earned when appellants accepted the Schmitts as purchasers, and the amount owing was due and payable upon the consummation of the contract of sale. The court did not err in giving Instruction No. 2.

: The jury in their verdict found for plaintiff in the sum of $340 with interest at 6%, but did not compute the amount of said interest. The court accepted the verdict and rendered judgment thereon, which adjudged "that said plaintiff have and recover of said defendants the sum of Three Hundred Forty ($340.00) Dollars assessed by the jury as aforesaid, together with interest at the rate of 6% from March 28, 1950, to date, and also the costs herein incurred."

 Appellants contend that the verdict was improper by reason of the failure of the jury to compute said interest. Under the law it was the duty of the jury to compute the interest due and to state the amount thereof in their verdict. The trial court should have refused to accept the verdict as returned. However, the error is not such as to require a reversal of the judgment. The jury found, under a proper instruction, that plaintiff was entitled to recover interest. The amount thereof was a mere mathematical calculation.

In Home Trust Co. v. Josephson, 339 Mo. 170, 95 S.W.2d 1148, our Supreme Court held that the trial court might properly instruct the jury as to the amount of interest where there was no dispute as to the amount due. If the trial court could so instruct the jury, it follows that the court would be authorized to calculate the amount due under the verdict in this case, and render judgment accordingly.

It is provided by Section 512.160, subd. 2, RSMo 1949, V.A.M.S., that the appellate court shall not reverse any judgment unless it believes that error was committed by the trial court materially affecting the merits of the action. To reverse this judgment and send the case back to the trial court for the purpose of having the interest calculated would be highly undesirable.

It is within the authority of this court to give such judgment as the trial court ought to have given, or to modify the judgment of the circuit court in such man-

**614**

ner as seems best, and affirm it as modified. Section 512.160, subd. 3, RSMo 1949, V.A. M.S.; Arnold v. Arnold, Mo.Sup., 222 S.W. 996. The judgment of the trial court is therefore modified to show the amount of interest due plaintiff, which is the sum of $74.73. As modified, the judgment is affirmed.

RUDDY, J., concurs.