ISAAC T. COOK COMPANY, a Corpora-
tion (Plaintiff), Respondent,

v.

BANK OF ST. LOUIS, a Corporation
(Defendant), Appellant.

No. 29583.

St. Louis Court of Appeals.
Missouri.

Jan. 3, 1957.

Rehearing Denied Feb. 1, 1957.

Thompson, Mitchell, Thompson & Douglas, Robert O. McNearney, Harold I. Elbert, St. Louis, for appellant.

Tralles, Hoffmeister & Gilpin, Forest P. Tralles, Fred J. Hoffmeister, St. Louis, for respondent.

WOLFE, Commissioner.

This is an action to recover $1,910 alleged to be due the plaintiff under the terms of a contract with the defendant. The defendant contends that only $807.50 is due the plaintiff, and this amount together with certain interest and costs, totaling $939.12, was paid into court by the defendant. The trial was to the court upon an agreed statement of facts and resulted in a judgment for the plaintiff in the principal sum of $1,910, with interest from December 4, 1951, amounting to $473.68. From the judgment for $2,383.68, which is the total of the principal and interest found to be due, the defendant prosecutes this appeal.

It was agreed in the statement of facts that on May 4, 1944, the Isaac T. Cook Company, plaintiff, entered into a contract with the Industrial Credit Corporation whereby the Cook Company contracted to manage a seven-story building located on Washington Avenue, in the City of St. Louis, owned by the Industrial Credit Corporation. By successive transfers the property passed to several different corporations and each new owner carried on under the contract, including the present owner and defendant, Bank of St. Louis.

The contract, which was drawn by the Isaac T. Cook Company, is as follows:

"This Agreement, Made and entered into as of this 4th day of May, 1944, by and between the Industrial Credit Corporation, a Missouri Corporation, hereinafter known as the Industrial Credit Corporation, and Isaac T. Cook Company, a Missouri Corporation, hereinafter known as "Cook Company", Witnesseth, That,

"Whereas, The Industrial Credit Corporation, is Owner of the property in City Block 173, City of St. Louis, fronting approximately 100 ft. on Washington Avenue, by a depth of 225 ft. north to Lucas Avenue, and fronting approximately 100 ft. on the South side of Lucas Avenue, being Lot —— in said City Block 173, upon which is erected a seven-story building, known as 901-03-05 Washington Avenue, and 615-17-19 North Ninth Street, and,

"Whereas, said Cook Company, is engaged in the business of leasing and managing buildings of a similar character, and,

"Whereas, said Industrial Credit Corporation, is desirous of obtaining the services of said Cook Company in the management of its property above described.

"Now Therefore, in consideration of the sum of One Dollar, each to the other in hand paid, receipt of which is hereby acknowledged, and other considerations hereinafter set out, the parties hereto agree as follows:

"(1) That said Industrial Credit Corporation hereby employs the said Cook Company to manage and operate the above described building, commencing May 1st, 1944. Services to be rendered by said Cook Company will be as follows:

"(a) It shall negotiate leases and rental agreements and renewels thereof covering the various units in said

building at the schedule rate and term approved by said Industrial Credit Corporation, which said schedule shall be effective until changed by order of said Industrial Credit Corporation. Said Industrial Credit Corporation reserves the right to approve or reject all prospective tenants.

"(b) To collect all rental from tenants occupying spaces in said building, and account for same monthly.

"(c) To employ all help necessary in the operation of said building and the rate to be paid such employees to be agreed upon between the Owner and the Agent.

"(d) To purchase all supplies necessary in the operation of said building and make all minor repairs necessary to keep said building in operating condition. No repairs shall be made without the consent of said Industrial Credit Corporation, the cost of which shall exceed the sum of $100.00, with the exception of emergency repairs.

"(e) To keep necessary books, records and accounts in connection with the operation of said building, and to render a monthly statement on or before the fifteenth of the month following of receipts and expenses. Statement and remittance covering the net proceeds to be mailed to Industrial Credit Corporation, at the Home Office of the Corporation.

"The said Industrial Credit Corporation agrees to pay said Cook Company for all services to be rendered by it under the terms of this contract, the sum of Two Hundred Dollars, ($200.00) per month.

"All employees in the building, shall be directly under the control of said Cook Company, but their compensation shall be paid on the regular building payroll out of the funds of the said Industrial Credit Corporation.

"This contract may be terminated by either party upon sixty (60) days' notice in writing served on the party to be notified at its usual place of business. In the event this contract is terminated, the Industrial Credit Corporation agrees to pay to said Cook Company a commission of three percent (3%) on all rentals to accrue on leases made or renewed by the Cook Company during the term of the contract; but no commission shall be paid on any lease where the terms of the lease have been breached by the Lessee or possession of the leased premises has been surrendered to the Lessor."

In 1947, the monthly compensation payable to the Isaac T. Cook Company for its management of the building was increased by agreement to $325 per month.

On October 29, 1951, the defendant gave notice by letter to the plaintiff that it was terminating the contract effective October 31, 1951.

In 1949, the plaintiff had procured a renewal lease agreement between the defendant and Mandel Manufacturing Company. The lease was for a term of seven years beginning January 1, 1949, and ending December 31, 1955. The rental provided by the lease was $9,000 a year for the first two years and $10,500 a year for the last five years of the lease. The Mandel Company was in possession under this lease at the time the defendant gave notice to the Cook Company that it was terminating the management contract. The Mandel Company continued to occupy the premises under the lease until July 1, 1952, when it surrendered occupancy to the defendant.

On December 4, 1951, Isaac T. Cook sent a bill to the Bank of St. Louis for $1,910. This total represented the management fee of $650 covering the months of November and December, as the Cook

Company was entitled to sixty days' notice of the termination of the contract, and $1,260 commission on the Mandel Manufacturing Company lease, the last figure being three per cent of all rental to accrue under the terms of the lease after the termination of the Cook Company contract. The defendant concedes that the plaintiff is entitled to the $650 claimed under the contract as its management fee for sixty days after the notice of termination. The difference between the parties arises over the sum due the plaintiff by reason of the Mandel Manufacturing Company lease. The defendant maintains that under the terms of the contract plaintiff is only entitled to three per cent on the rent actually paid to the defendant from January 1, 1952 to July 1, 1952, when the lease was surrendered. This amounts to $157.50. As stated, the defendant tendered into court the above amounts together with interest and costs.

The sole question for determination is the meaning of the clause of the contract which states: "This contract may be terminated by either party upon sixty (60) days' notice in writing served on the party to be notified at its usual place of business. In the event this contract is terminated, the Industrial Credit Corporation agrees to pay to said Cook Company a commission of three percent (3%) on all rentals to accrue on leases made or renewed by the Cook Company during the term of the contract; but no commission shall be paid on any lease where the terms of the lease have been breached by the Lessee or possession of the leased premises has been surrendered to the Lessor."

Defendant, appellant, contends that two constructions of the above paragraph are possible; first, that the Cook Company was to be paid a commission of three per cent of the rent called for in all leases not surrendered or breached at the time the contract was terminated, and the second, for which it contends, is that no commission was due the Cook Company on a lease, except a commission on the rental actually paid, if the lease was surrendered after termination of the management contract.

It is asserted that the contract must be given a construction most favorable to the defendant as it was drafted by the plaintiff. We are cited to Leathers v. Metalcraft Mfg. & Sales Corp., Mo. App., 240 S.W.2d 211, 213, which restates the rule that where a contract "is fairly open to two interpretations, that construction must be adopted which is most strongly against him who prepared it and most strongly in favor of him who merely signed it". This rule, however, is only to be applied when all other means of construction fail. Larson v. Crescent Planing Mill Co., Mo.App., 218 S.W.2d 814; Commercial Electrical Supply Co. v. Missouri Commission Co., 166 Mo.App. 332, 148 S.W. 995; 17 C.J.S., Contracts, § 324. The last phrase of the sentence "; but no commission shall be paid on any lease where the terms of the lease have been breached by the lessee or possession of the leased premises has been surrendered" cannot be considered out of context. It may neither be considered apart from the sentence which it concludes nor apart from the whole contract. "The ordinary meaning of the language used must be given effect and the intention of the parties gathered from a consideration of all provisions of the contract." Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262, 268.

It is asserted that a rule of grammar, which is also a rule of law, is that a relative clause relates to the nearest antecedent that will make sense. Working from this point, it is contended that the words "have been" and "has been" refer not to the date of termination but to the fact that commissions are not to be paid on leases surrendered. This "last antecedent" rule is merely an aid to construction and will not be adhered to where a more remote antecedent is clearly intended. Norberg v. Montgomery, 351 Mo. 180, 173 S.W.2d 387. The whole sentence under

consideration treats with what is to be done at the time of the termination of the contract. The leases exempt from the commission provided must have been breached or surrendered at that time. The tense used fully bears out this construction. To construe the sentence as the defendant would have us do would compel us to hold that the parties meant to say that upon termination there would in the future be paid a commission on all leases the Cook Company had procured except those that might thereafter be breached or surrendered. We cannot rewrite the contract.

The object of the termination clause was clearly to protect the Cook Company from a situation where it might have secured good tenants on long term leases and the building owners then might have decided that they would end the contract and avoid any future payments under it. By defendant's construction they could have done this, for they could have accepted, on the day of termination, the surrender of all leases and then entered new lease agreements with the same tenants. If the clause is of doubtful meaning it should be "given a construction which will make it fair and reasonable between the parties and will not give one party an unfair advantage of another". Veatch v. Black, 363 Mo. 190, 250 S.W.2d 501, 507.

The defendant makes mention of the fact that no time for the payment of the commission is set out. This, however, is of no importance for "when not fixed by the instrument the law will deem the amount due and payable when the party has fully performed his obligations under the contract and nothing remains to be done but payment to him of the amount due". Doerflinger Realty Co. v. Fields, Mo.App., 281 S.W.2d 609, 613. The amount to accrue under the terms of the lease at the time of the termination of the management contract was the future rental called for by the lease and the plaintiff was en-

titled on the date of termination to three per cent of that sum, as the trial court held.

For the reasons stated, it is the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

ANDERSON, P. J., MATTHES, J., and ELMO B. HUNTER, Special Judge, concur.