**Cedric SIEGFRIED, Administrator of the Estate of Craig Siegfried, Deceased, Plaintiff-Appellant,**

v.

**I.G.W.T., INC., Defendant-Appellant.**

**No. KCD 30590.**

Missouri Court of Appeals, Western District.

Dec. 3, 1979.

Motion for Rehearing and/or Transfer Denied Dec. 31, 1979.

Application to Transfer Denied Feb. 11, 1980.

Robert J. Wise, Independence, for plaintiff-appellant.

Donald C. Bollard, III, Deacy & Deacy, Kansas City, for defendant-appellant.

Before DIXON, P. J., and TURNAGE and KENNEDY, JJ.

TURNAGE, Judge.

Cedric Siegfried brought this action as administrator of the estate of Craig Siegfried, deceased, for sums alleged to be due on a contract entered into by Craig and the predecessor in interest of I.G.W.T., Inc. Both parties waived a jury and the court entered judgment in favor of the administrator in the sum of $19,710 but refused to award interest on such amount.

I.G.W.T., Inc. appeals from the judgment and the administrator appeals from the failure of the court to add interest. On this appeal I.G.W.T. contends the death of Craig terminated the contract for his personal services and no further sums under that provision were due. The administrator on his appeal claims he was entitled to interest on the entire sum from the death of Craig. Reversed and remanded.

In 1958, Craig Siegfried entered into a contract with KIMO, Inc. for the sale of a radio station operated by Craig in Independence. The contract consisted, so far as applicable here, of three parts. Part One was an agreement for an installment sale of the radio station. Part Two, the main part in controversy, provided for payment to Craig of $60,000 in monthly installments of $500, "in further mutual consideration of first party's [Craig] personal special experience, skill, intelligence, energy, unique and specialized talent in the radio field." To

impart this special experience and skill to KIMO, Craig agreed to make himself available at all reasonable times during business hours, but no more often than one day in any calendar month, at the KIMO offices in Independence, by letter, telephone or telegram. This agreement for personal services was for a term of ten years. In addition, Craig agreed not to be employed, engaged or interested in the business of standard AM radio broadcasting within the effective listening and receiving range of radio station KIMO for a term of ten years.

The contract also contained Part Three which contained general provisions. Among these provisions were the following:

I. It is agreed and covenanted that all sums payable by second party to first party hereunder will not under any circumstances be discounted or reduced by operation of law or otherwise.

N. This agreement shall be binding upon and inure to the benefit of the parties hereto, the heirs, personal representatives, successors and assigns of seller and the successors and assigns of buyer.

R. Second party covenants and warrants that in the event of seller's death, all moneys thereafter becoming due or payable to seller will be paid to Thomas Craig Siegfried and Norma Kaye Houtz, first party's issue and legal representatives.

I.G.W.T. is the successor in interest to KIMO to the contract. Craig died on April 21, 1965, and I.G.W.T. ceased making any payments under Parts One and Two of the contract at that time.

The parties stipulated that the balance due at the time of trial on Part One, the installment sale agreement, was $710, and on Part Two, for personal services and non-compete agreement, $19,000. The parties stipulated that the administrator was entitled to recover the $710 due under Part One and the only dispute to be decided by the court was whether the administrator was entitled to recover $19,000 under Part Two, or whether that agreement was terminated by the death of Craig.

After a hearing the court entered judgment in which it found the agreement contained a clear and unambiguous intent on the part of the parties to contract for the payment of a sum certain for a time certain after the death of Craig with the result that Craig's death did not terminate the obligation to pay for personal services under Part Two.

The law governing this case is set out in *Jones v. Joy Manufacturing Co.*, 381 S.W.2d 860 (Mo.1964). *Jones* involved the following facts: Jones agreed to perform personal services for Joy for a specific term and Joy agreed to make payment for such services. Jones died before the expiration of the contract and his heirs brought suit to recover the unpaid balance which Joy had agreed to pay for the services. The contract contained a clause that the agreement should be binding upon and inure to the benefit of the parties, their heirs and/or successors. The court recognized the general rule to be "that contracts calling for the rendition of distinctive personal services are discharged and terminated by operation of law upon the death of the party agreeing to render the services, . . . ." p. 862[1]. The heirs argued that the clause providing for the agreement to be binding upon and to inure to the benefit of the heirs and successors of the parties created an ambiguity as to whether this indicated an intent for the payment for the personal services of Jones to continue after his death. The court held such clause was not ambiguous and further stated: "Nor can the provision that the contract enure to the benefit of the heirs be reasonably construed as a third-party beneficiary contract raising an obligation on Joy's part to pay the heirs the monthly stipends reserved for Mr. Jones, in the absence of a clear and unmistakable provision for the survival of the obligation in their favor after the death of Mr. Jones." p. 863[3]. The court indicated, however, that it would be proper for the parties to such a contract to provide for payments to third party beneficiaries "of a sum certain for a time certain after the death of the party

whose services were bargained for, . . ." p. 863[3]. However, the court held the contract there did not contain any provision which would express an intention of the parties that payment would continue after the death of Jones.

The question in this case is whether clauses I, N and R express an intent that the payment for personal services continue after Craig's death. *Jones* held Paragraph N did not accomplish this purpose so the intent to continue payments must be found from Paragraphs I and R.

In construing these paragraphs it should be recalled that the agreement provided in Part One for an installment sale of the radio station. Other parts of the agreement provided for a lease of real estate and studio space. It is conceded that the obligation to make payments under all parts of the contract, except for Part Two, continued after the death of Craig. Thus, Paragraph R is obviously referable to payments which in any event were to continue if Craig, as the seller, died before all sums due were paid. Nothing in Paragraph R refers specifically to Part Two nor does that paragraph specifically provide that the payment for personal services under Part Two is to continue even if Craig should die and become unable to render the services bargained for. Nor does this paragraph provide for payment of a sum certain for a time certain after the death of Craig. Paragraph R is simply a paragraph in the most general of terms providing that whatever payments under the contract are to be made in the event Craig dies shall go to those designated as his issue and legal representatives. This paragraph does not purport to define what payments are due after death. It simply states that whatever payments are due shall be paid to certain persons. An intent to continue payments for personal services after death must be sufficiently specific to show the parties realize payments for personal services will terminate on the death of the party rendering the services, but with this knowledge the parties agree that such payments will continue. This paragraph does not evidence such intent.

Likewise, Paragraph One fails to express an intent that the payment for personal services continue after Craig's death. This paragraph does not refer to death nor to a continuation of payments but simply refers to a prohibition against discounting or reducing by operation of law any sums payable to Craig. It is not necessary to determine what this paragraph does mean, but it is sufficient to observe that it fails to express an intent that payments for personal services to be rendered by Craig should continue after his death.

There is no evidence that the agreement anywhere expressed an intent either in express terms or by necessary implication that payments under Part Two continue after the death of Craig. For that reason the trial court erroneously applied the law in its judgment awarding $19,000 to the administrator. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

The administrator contends he is entitled to interest on any amount found to be due from the date of death of Craig. Money is due and payable when there is an obligation to pay and the time set for payment has arrived. From that date the person entitled to payment is entitled to interest. *Doerflinger Realty Company v. Fields*, 281 S.W.2d 609 (Mo.App.1955). Here it was stipulated the sum of $710 remained unpaid on Part One of the agreement at the death of Craig. The parties stipulated and agreed interest was to be paid on any amount due. The agreement did not provide for the rate of interest but § 408.020, RSMo 1969, fixes the rate of interest on written agreements at 6% when no other rate is agreed upon.

The judgment is reversed and the cause is remanded with instructions to enter a judgment in favor of the administrator against I.G.W.T., Inc., in the sum of $710 with interest thereon at 6% from April 21, 1965.

All concur.